KELLY v. PENFIELD et al.

(Supreme Court, Appellate Division, Second Department. June 4, 1909.)

1. EASEMENTS (§ 17*)—IMPLICATION—SALE OF PLATTED LAND—STREETS.

Where the descriptive pamphlet advertising the sale of lots located near the boundary line of two towns, one of which lots plaintiff purchased from defendant, contained a map showing an open street, with which plaintiff's lot was directly connected by another short street, and the deed referred to another map filed with the register of deeds, showing the same street, plaintiff could rely on the maps, and could enjoin the closing of the open street shown thereon, where its closing would exclude him from another street, with which it connected, which was in the other town, unless he went in the opposite direction.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 45–49; Dec. Dig. § 17.*]

2. EASEMENTS (§ 61*)—OBSTRUCTION—INJUNCTION—COMPENSATION INSTEAD OF INJUNCTION.

Where plaintiff had an easement in a street, which was shown on maps of lots, one of which he purchased from defendant, so that he was entitled to enjoin defendant from closing it and building a house on the closed street, if defendant's house was already built and it would be inequitable to compel him to remove it, in an action to enjoin the closing of the street, plaintiff was entitled to damages or to have defendant purchase his lot at a valuation fixed by the court.

[Ed. Note.—For other cases, see Easements, Dec. Dig. § 61.*]

Burr, J., dissenting.

Appeal from Special Term, Westchester County.

Action by Richard Kelly against James T. Penfield and another. From a judgment for defendants, plaintiff appeals. Reversed.

The defendant James T. Penfield conveyed a lot of land to the plaintiff, it being sold at a general auction sale by the defendant by lots of a tract of land owned by him. The tract was situated in the city of New York at the boundary between it and the city of Mt. Vernon. The said sale was advertised by a descriptive pamphlet which contained two maps showing the lots by numbers and the streets. The lot sold to the plaintiff was 97, on the west side of Sound View Place, as shown on the said maps. On the other side of the said street on which the said lot is, and nearly opposite the said lot, a street marked on the said maps as Warner Place, runs at right angles from the said street east one block of 200 feet to another short street of two blocks in length, running parallel with said lot street, and marked on the said maps as Disbrow Place. One of these maps shows the said Disbrow Place as running

at its north end into a street shown on the said maps as South street. It was over the line in Mt. Vernon. This was the more complete map of the two; it showed all details of the tract and its surroundings. The other map had a broad line around the tract being sold, and was more restricted than the other map in details. Its object was more to show the general location of the tract. Disbrow Place was shown on it, but not as opening into South street. The deed to the plaintiff referred to still another map, filed in the office of the register of deeds of New York county, as showing the lot sold, and it showed Disbrow Place as running into South street. The said defendant has closed up Disbrow Place north of Warner Place, namely, between South street and Warner Place, and is building a house on it. This action is to restrain him from so doing.

The following is the opinion at Special Term.

"The decision must be for the defendants for the following reasons, viz.:

"First. That there was in fact no representation by the defendant James Penfield, or his agent, that Disbrow Place was actually extended through to South street in the city of Mt. Vernon.

"There was no such express representation. The furnishing to the plaintiff, as a proposed purchaser, of the maps with the advertisement of the sale did not constitute such a representation; because, while one map so furnished showed such extension for a part of the width, the other map showed that there was no such extension at all; and the two maps should have been considered together by the plaintiff.

"Second. That the plaintiff's lot is so situated, with other ample means of access to and from the neighboring parts of the city of Mt. Vernon, as not to suffer any substantial damage from the closing of the alleged extension of Disbrow Place within the limits of the city of Mt. Vernon.

"Judgment will therefore be rendered in favor of the defendants and against the plaintiff, dismissing the complaint upon the merits, with costs."

Argued before WOODWARD, JENKS, GAYNOR, BURR, and MILLER, JJ.

Rufus L. Weaver, for appellant.

Henry Willis Smith, for respondent James T. Penfield.

William T. Tomlinson, for respondent Minnie Penfield.

GAYNOR, J. By the closing of Disbrow Place from Warner Place to South street, the defendant is cut off from access toward the north, namely, to South street and Mt. Vernon, there being no opening thereto in the neighborhood. The only other way out is in the opposite direction, namely, toward the south. It cannot well be said that his lot is not materially injured thereby. Disbrow Place is not a remote street upon which his lot does not depend for egress. On the contrary, his lot is directly connected with it by another short street, established only to run from the block which the lot is on to Disbrow Place, and the principal reason for going through it to Disbrow Place must be to get out to South street, viz., to Mt. Vernon. The recent case of Reis v. City of New York, 188 N. Y. 58, 80 N. E. 573, is an authority for the plaintiff instead of for the defendant, for what is held there is substantially that the purchaser of a lot on a mapped tract may not restrain the closing of remote streets shown on the map, on which his lot in no way depends for ingress or egress. The suggestion that the two maps which formed part of the advertisement of the sale taken together showed that Disbrow Place was not laid out to South street is not tenable. The one which showed all the details of the tract and its surroundings exhibited it as so laid out, and the plaintiff had the right to rely on it. If the defendant's house be built, and it be inequitable

to make him take it down, the plaintiff, whose lot is vacant, should get other relief as by way of damages, or that his lot be taken by the defendant at a valuation to be fixed by the court, as an alternative.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. WOODWARD, JENKS, and MILLER, JJ., concur. BURR, J., votes for affirmance, on the opinion at Special Term.