Hooley, J.
This action, in form, is one for the partition of certain beach lands located in Nassau County, New York. In reality, however, it is an action to bar a claimed easement to use the beach in the development known as Nassau Shores which easement is claimed by the corporate defendants, the developer, and certain individual defendants who were purchasers from the developer.
In or about the year 1926 Harmon National Beal Estate Corporation, hereinafter called Harmon Corporation, developed the residential community in question. It bordered on Great South Bay. The developer filed a map entitled “ Map of Nassau Shores, Section No. 1 ” in the office of the clerk of Nassau County on May 8,1926.
The subject of this action is situated at the south end of East Shore Drive as shown on said map. It is labeled on the filed map as “ Community Beach ”. Upon the filing of the map, the developer aforesaid started selling lots as shown on the filed map and it represented to various purchasers of lots including some of these individual defendants that all the recreational features erected or to be erected by it, the developer, consisting of clubhouse, golf course and bathing beach would be held for the benefit, use and recreation of the lot owners in Nassau Shores. The developer, Harmon Corporation spent approximately $75,000 for the erection of a clubhouse, golf course, bathing pavilion, bathing beach and pool. All of these facilities were carried on the developer’s books at $1. The lot owners, their guests and prospective purchasers used the bathing beach facilities upon payment of a nominal fee. This indeed was necessary inasmuch as taxes thereon had to be paid and the beach and the improvements thereon were required to be kept clean and serviceable. In the early years the developer rigidly carried out its representations to the purchasers. During the depression the developer, Harmon Corporation, became oppressed by financial difficulties and it endeavored to have the lot owners form an association to take over the ownership and management of the facilities which the developer had set aside for their use. The lot owners at that time did not form such association. In 1938-1939 the taxes were *920 not paid on the beach property. There was danger of a tax sale and certain of the lot owners then formed a corporation known as Nassau Shores Country Club of Massapequa Inc., hereinafter called Country Club, to take title to the recreational facilities including the beach in question. On or about August 6, 1942, the defendant Nassau Shores Inc., a Harmon Corporation subsidiary in which title was vested, conveyed to said Country Club among other parcels, the beach in question for the use and benefit of the lot owners at Nassau Shores. The deed contained the following express condition: “ This conveyance is made upon the express condition that the premises therein described be used for recreational purposes for the benefit of the owners of the property in the development of ‘ Nassau Shores ’ and owners and residents in its immediate vicinity under reasonable rules and regulations.”
The said Country Club became unable to pay the taxes on the beach property. In or about June, 1944, it reconveyed the bathing beach to said Nassau Shores, Inc. The deed contained the same condition as above quoted.
Thereafter the beach was sold by the County of Nassau for taxes. Plaintiff and defendant, John P. McKenna, became the owners of the fee of the beach by way of tax sale. They claim that their title to the beach is free from the claimed easement of the lot owners of Nassau Shores to the use of the beach.
There are two questions for decision by the court: (1) Did the lot owners acquire an easement in the beach lands at Nassau Shores? (2) If so, did the tax sale cut off such easement?
No express easement to the use of the beach was granted in the deeds to the lot owners. Therefore whatever easements may exist in the beach arise solely by implication. Hence the question is one of intention to be answered, like questions of intention generally, in the light of all the circumstances. (Matter of City of New York [Northern Blvd.], 258 N. Y. 136, 147; Erit Realty Corp. v. Sea Gate Assn., 259 N. Y. 466, 470; Fieder v. Terstiege, 56 N. Y. S. 2d 837, 843, affd. 273 App. Div. 982.)
It is to be noted that on the filed map the beach was referred to as “ Community Beach ”. This would seem to have considerable significance. In Erit Realty Corp. v. Sea Gate Assn. (259 N. Y. 466, supra) the court said, in part, at pages 470-471: ‘ ‘ What appears upon the filed map, by reference to which the property of plaintiff was described in the original conveyance, is an important circumstance. * * * The word ‘ Reservation ’ in the label ‘ Beach Reservation ’ marked on the area in question lacks the certainty of meaning which it has as a term of art in a deed of conveyance. It must be interpreted in the light *921 of its setting. It was so interpreted in a contemporaneous resolution of the directors of the Norton Point Land Company, declaring * the intent of the company as to the so-called Beach Reservation ’ to be that it should be ‘ forever kept for the free access and exclusive use of all the owners of any lots. ’ It may be supposed that the sale of expensive lots in an exclusive seaside colony would have been difficult under any other arrangement. There can be no doubt that an easement in the beach and in at least one street giving access to it was appurtenant to plaintiff’s property when defendant took its title.”
While in the case at bar there was no corporate resolution as precise as the one referred to in Erit Realty Corp. v. Sea Gate Assn. (supra) the advertisements by the corporation and the brochures which it issued and the representations which it made to various purchasers, all of which it is clear from the testimony they relied upon, indicate a clear intention that there was to be an easement with respect to the beach in favor of the purchasers of lots in the development. In addition, the language used on the filed map in this case is much stronger than that used in the Erit case (supra). The use of the words “Community Beach” appearing on the filed map would clearly seem to indicate an intention that the beach was for the use of the owners of the lots. Otherwise it is difficult to find any reason for the use of the word “ Community ”. But the language in the advertisements and the brochures is even more indicative of the intention herein. Defendant’s Exhibit E is the type of advertisement used by the Harmon Corporation in connection with the sale of lots. It is therein stated referring to the lots in question: “ This price includes membership eligibility in the Nassau Shores Country Club without initiation fee, with its golf course, complete club house, tennis courts, swimming pool, and bathing pavilions.” (Italics supplied.)
The swimming pool and bathing pavilions are located on the portion of the filed map referred to as “ Community Beach ”. In one of its brochures the corporation advertised as follows: “ Here is a gorgeous bathing pavilion where you can have a permanent locker, and outdoor swimming pool, and the waters of the Great South Bay for boating adventure.”
There was a picture on the brochure of the large bathing pavilion. The following notation appeared alongside of the picture: “ Why not join the merry throng on this sporty golf course this summer, and swim from the beautiful Nassau Shores Bathing Pavilion that stands nearby? ”
In March, 1931, a letter was sent to the property owners by Harmon Corporation setting forth that it hoped ultimately to *922 turn over the matter of the operation and control of the pavilion and golf course to the property owners. It stated, in part, as follows: ££ In 1929 we took the first step toward relinquishing control of the Club and its various activities to the property owners. As a sufficient number were not ready to assume the responsibility, we carried on. We now feel that the time has come to take definite steps to put the recreation facilities of Nassau Shores on a self-sustaining basis. This conclusion on our part is the result of a careful study of conditions at Nassau Shores and of our anxiety faithfully to fulfill our expressed intention to dedicate the Club property to the recreational use of property owners in perpetuity. To so dedicate property that cannot or will not be preserved and maintained by the beneficiaries would be an idle gesture that we do not intend to make. ’ ’ (Italics supplied.)
It is to be noted that the foregoing italicized section of the paragraph indicated a clear intention of the Harmon Corporation to dedicate the property to the recreational use of the property owners in perpetuity. This statement made at a time when no litigation was in the offing would clearly seem to confirm that the intention of the corporation was to grant an easement to the property owners.
The plaintiff makes much of the fact that the property owners never used the beach and bathing facilities without the payment of a fee. He also points out that the bathing beach and facilities have always been available to the public. In fact he contends the only difference between the use of the facilities by the property owners and the public at large is that the property owners paid a reduced fee. The court does not feel that the fact that a fee was paid makes any difference insofar as the easement is concerned, except that, of course, none of the property owners having an easement could use the facilities without the payment of a reasonable maintenance fee. From the evidence in the case it appears that there is an implicit obligation upon any one who claims the benefit of the easement in question to pay a reasonable charge for the use thereof, such charge to be devoted to the necessary maintenance and repairs of the premises and toward the payment of the taxes on the premises. It is difficult to believe that these various property owners would ever have bought what was believed to be highly residential property adjacent to a beach unless they felt that they were getting some right in the beach.
In addition, it is well settled that where a developer of land sells lots with reference to a map on which squares or parks or beaches are designated and representations are made by the *923 developer that such parks or squares or beaches are for the use of the lot owners, the purchasers of such lots acquire an easement in such parks, squares or beaches by implication and representation. As was said by the court in Williamson v. Salmon (105 Misc. 485, 487-488, affd. 196 App. Div. 922, affd. 233 N. Y. 657): “A party who sells a lot according to a map should be held to his implied covenant of an easement in all the streets and parks shown on the map so far as their existence adds to the value of the property sold. Wymanv. City of New York, 11 Wend. 486; Tibbits v. Cumberson, 39 Hun, 456; Kerrigan v. Backus, 69 App. Div. 329; Kelly v. Penfield, 67 Misc. Rep. 272; 133 App. Div. 367; Child v. Chappell, 9 N. Y. 246, 257; Taylor v. Hopper, 2 Hun, 646; 62 N. Y. 649. The case of Lord v. Atkins, 138 N. Y. 184, and similar cases confirm the easement in Bietry Beach park to the lake shore including the 150 foot plot ”. (See, to same effect, Johnson v. Shelter Is. Grove & Camp Meeting Assn., 122 N. Y. 330, 334; Erie Realty Corp. v. Sea Gate Assn., 259 N. Y. 466, supra; White v. Moore, 161 App. Div. 400, and Pratt v. Buffalo City Ry. Co., 19 Hun 30.)
The case at bar is not unlike the case of Hofmann v. Hofmann (172 Misc. 378, affd. 259 App. Div. 820, mod. 283 N. Y. 730) and the case of Phillips v. West Rockaway Land Co. (226 N. Y. 507). In the latter case, there was no filed map or deed from which it could be claimed that any easement was created. There the agent for defendant pointed out the lots to the plaintiff, and told him that they were the nearest lots to the ocean for sale, and that there would be nothing between those lots and the ocean save a boardwalk. The defendant’s agent had in his possession a map which indicated the lots as ocean front lots. The map contained an inscription which read (supra, p. 508), “ ‘ all right, title and interest in and to the Beach front reserved to the West Rockaway Land Co.’ ” The plaintiff in reliance upon the statements made to him and the situation and location of the lots, purchased and erected his cottage thereon facing the ocean. Defendant thereafter plotted the land between plaintiff’s property and the ocean and sold such lots as ocean front lots. The Court of Appeals held that at the time of the sale and as part of the same transaction, the defendant subjected the lands south of plaintiff’s lots to a permanent, open and continuous service or easement in favor of the plot sold to plaintiff, save that defendant might erect a boardwalk thereon. In Hofmann v. Hofmann (supra) it was held that although the contracts or deeds did not contain any covenants upon the subject, all the literature put out by the defendant’s grantor, newspaper advertisements, pamphlets, circulars and oral representations, together *924 with the actual physical development of the property by the defendants, showed that the plan was to develop the property with private dwellings which were to be built around a square so that the owners would enjoy the benefit of a public park. The decision was based upon the principles laid down in Phillips v. West Rockaway Land Co. (supra).
As Nassau Shores was a highly restricted residential development and as the easement in the beach was in actual use and enhanced the value of the lots, such easement passed as appurtenant to the land conveyed though not mentioned. “No principle of law is better settled than that some things pass by a conveyance of lands as incident' and appurtenant thereto, though not named therein. This is the case with a right of way or other easement appurtenant to land.” (Mattes v. Frankel, 157 N. Y. 603, 608. See, also, Child v. Chappell, 9 N. Y. 246.)
The plaintiff herein purchased property at Nassau Shores and resided there for many years before the tax levy of 1938-1939. He was a vice-president of the civic association at Nassau Shores. He was a director and stockholder of a corporation formed by the property owners for the purpose of protecting their mutual rights. He knew all about the development, the representations in connection with the sales of the lots and the history of Nassau Shores. Accordingly he is chargeable with notice and knowledge of the easement rights of the property owners and purchased subject to them. (Fieder v. Terstiege, 56 N. Y. S. 2d 837, affd. 273 App. Div. 982, supra.)
The second point to be determined is whether the easement of the defendants was cut off by the tax sale. It is well settled that an easement acquired prior to a tax lien is not subject thereto, nor does a foreclosure of a tax lien or a deed from the county treasurer cut off the easement. (Tax Lien Co. of N. Y. v. Schultze, 213 N. Y. 9, 12, 13; Jackson v. Smith, 153 App. Div. 724, affd. 213 N. Y. 630; Harris v. Curtis, 139 App. Div. 393, 396, affd. 211 N. Y. 573.)
The plaintiff points to the fact that by chapter 610 of the Laws of 1947, section 154 of the Tax Law was amended so as to provide that a tax title is now to be taken subject to all easements or rights of way which were in existence at the time of the levy of the tax on account of the nonpayment of which such real estate was sold. His claim is that by virtue of such change in the statute tax titles are now subject to easements, but that prior to the change in the statute such was not the fact. Otherwise, he urges no change in the statute was necessary. However it is clear from the foregoing cases that even before the change in the statute, tax titles were subject to easements and that the only *925 effect of the change is to enact into the statute the rule as already laid down by the cases.
It follows that the easement of the defendants in the ‘ ‘ Community Beach ” was not cut off by the tax sale herein and that plaintiff and his co-owner took title subject thereto.
The easement to which defendants are entitled is the same easement as existed from the time of the creation of the bathing beach and pavilions, viz., the right to the use of the same subject to a reasonable fee therefor and to reasonable regulation and such use is not exclusive to the owners of the community and such easement will not prevent the owners from offering the beach and facilities to the use of the public as heretofore.
The court finds the rights and interests of the plaintiff and defendant McKenna to be set forth in the amended complaint except as hereinbefore indicated.
The plaintiff is entitled to judgment of partition.
Settle judgment on notice. No costs.