RUDOLPH R. LOENING, Plaintiff, *v.* RED SPRING LAND COMPANY et al., Defendants, and MARGARET P. BUCKNALL, Intervener, Defendant.

Supreme Court, Special Term, Nassau County, November 30, 1949.

*Charles A. Ellis, David C. Bennett, Lewis F. X. Cotignola* and *Nathaniel A. Kahn* for plaintiff.

*James H. Black* and *Harold E. Herrick* for intervener, defendant.

DALY, J.   The plaintiff is the owner of three parcels of land situated in Glen Cove, Nassau County, New York, which he acquired on August 5, 1943, under deeds of conveyance executed by the commissioner of finance of the City of Glen Cove.   Each

of said parcels had been sold to the plaintiff at public auction, held on June 14, 1941, for unpaid taxes for the year 1939, which were assessed to the original owner, Red Spring Land Company, hereinafter referred to as the company. The plaintiff commenced an action against the said company and the People of the State of New York to bar claims, pursuant to the provisions of article 15 of the Real Property Law. Margaret Powers Bucknall, hereinafter referred to as the intervener was, by an order dated June 7, 1947, granted leave to intervene.

The original defendants having defaulted, the plaintiff amended his complaint by adding a second cause of action for a judgment declaring that the defendants have no estate right or interest whatsoever in plaintiff's land, which includes beach or waterfront property on Long Island Sound. The intervener served an answer to said amended complaint in which she asserted that the real property of which plaintiff claims to be the sole owner in fee is now, and was for many years prior to the deeds of conveyance to him, subject to " a perpetual right or easement * * * to walk, ride or drive over and otherwise enjoy the roads, drives and public grounds which have been or which may hereafter be established * * * and the right to walk upon, to use for boating and bathing purposes, and otherwise to enjoy the beach or waterfront of the tract upon Long Island Sound and Hempstead Bay, reasonably and with due regard to the rights of others, * * * " in favor of certain described property owned by her, and that " any title to the property which the plaintiff might have is subject to the aforesaid rights, easements and privileges of the intervenor." The case was tried upon the issues presented by the last-mentioned pleadings, and stripped of all collateral matter, the question to be determined herein is what rights of the intervener, if any, in the lands of the plaintiff here involved, survived the delivery of the tax deeds mentioned above.

Both under section 154 of the Tax Law, as amended by chapter 610 of the Laws of 1947, effective April 5, 1947, and prior thereto under the rule laid down by authoritative cases, a tax title is subject to all easements or rights of way in existence at the time of the levy of the tax, on account of the nonpayment of which, such real estate is sold (*Wilkinson* v. *Nassau Shores, Inc.,* 86 N. Y. S. 2d 603, and the authorities cited at page 610; see, also, *Town of Harrison* v. *Campagna,* 193 Misc. 239, affd. 274 App. Div. 898.)

The plaintiff contends, however, that no easements to walk upon and enjoy the beach or waterfront were in fact granted,

as claimed by the intervener, and that whatever rights to the beach did exist, they were either lost by abandonment, or /by failure to observe certain conditions, and in any event, were extinguished by the tax deeds.

The company was incorporated on August 2, 1890, for the purpose of "purchasing, acquiring and improving real estate for residences, homesteads and apartment houses; to be leased and conducted by the corporation, and occupied by the stockholders thereof and others, and also for the purpose of purchasing, acquiring, maintaining, improving and managing a building or buildings which shall contain a hall for public meetings and entertainments, and apportioning and distributing such real estate and buildings among the stockholders and members of said corporation and also for filling in and improving lands."

The entire capital stock consisted of 350 shares, each of the par value of $100, and was fully issued in proportion to the value of each parcel of land allocated to each member of the corporation.

In October, 1890, the company acquired a portion of what was known as the Weeks Farm, situated in the town of Oyster Bay, then Queens County, now Nassau County, for the development into residences for the use of its stockholders, who were a group of people of means, who desired to live on large estates in an exclusive manner. The property acquired was located on a point of land, bordered on the west by Hempstead Bay, and on the north by Long Island Sound, in the then village of Glen Cove, which became a city in the year 1917, and included the beach in question together with the upland adjacent thereto. The company filed a map on which was shown numbered lots and names of roads as laid out. This map will be hereafter referred to as Map No. 91. The greater part of the property was then apportioned to the stockholders according to lot numbers, and instruments evidencing such apportionment were duly executed and recorded.

By January 2, 1892, each of such stockholders received from the company a conveyance of the lot or lots selected by and apportioned to him. Among such stockholders were the intervener's predecessors in title. All of the deeds were in printed form, except as to that portion which contained a description of the property conveyed, and also contained the following clause: "And also a perpetual right or easement, in common with all other present and future owners of lots within said tract, to walk, ride or drive over, and otherwise enjoy the

roads, drives and public grounds which have been or which may hereafter be established by said Grantor for the common benefit of said lot-holders, and the right to walk upon, to use for boating and bathing purposes, and otherwise to enjoy the beach or water-front of the tract upon Long Island Sound and Hempstead Bay, reasonably and with due regard to the rights of others, and under such regulations as may from time to time be reasonably established by the Grantor or its successors for the use or enjoyment of said roads, beaches and grounds; the Grantor expressly reserving the right of such regulation thereon: '' Each deed contained eight covenants to expire on and after the first day of January, 1906, with the exception of two relating to liquors and dedication, which were to be perpetual. In each of the deeds the company covenanted with the residents, guaranteeing among other things that all the other conveyances made by it within the bounds of its tract would contain like covenants, exceptions and reservations with those contained in the particular deed of conveyance, and '' that all of said covenants, exceptions and reservations in this and in said other deeds shall enure to the benefit of, and may be enforced by, any other lot-holder within said tract, in so far as they afford preventive remedies; except that the said Grantor may, upon the votes of two-thirds of its stockholders, holding at least two-thirds in amount of its capital stock, sell, grant and convey land upon said tract for the purposes of a hotel, club-house or casino, without any of such restrictions and in such form as it may deem best.''

The relationship between the company and its stockholders and grantees was charted in the following two of the eight covenants:

'' V. For all purposes of maintenance, repair, grading and other purposes of common benefit or concern to the lot-holders of said tract, the Grantor and its successors shall have the entire control and possession of all roads, paths, parks, public buildings and works which have been or may be established by said Grantor or its said successors on said tract, and may make proper regulations for the use thereof, and shall have and may assign the right and easement to lay water pipes therein; and may regulate or prohibit the passage over the roadways of any wagons, vans or vehicles which from extra weight or any other cause may require special regulation.

'' VIII. The Grantee, as owner of the premises hereby conveyed, agrees to pay the reasonable quota or proportion which shall be levied upon the said premises for the maintenance of

the roads, improvements, etc., on the said tract, pursuant to the regulations printed at the end of this deed, or any future reasonable modifications thereof, duly made as therein provided; and such regulations shall be deemed part of this covenant." In addition, there was annexed to each deed a schedule of " Regulations For the Maintenance, Improvement and Repair  *  *  * " of the company's retained lands.  These regulations provided for an annual assessment upon all lots, except those held for the common benefit of all lot holders, for the maintenance, improvement and repair of the roads, water supply, drainage, buildings and shore facilities and other improvements and common uses of the tract.  Maintenance included the payment of town, county and State taxes on the company's retained property.  The regulations also made reference to annual and other meetings of the lot owners, defined some of their rules and contained a current schedule of percentages of the proposed assessment against each of fifty-one lots.

By agreement dated April 5, 1898, the stockholders of the company agreed that " none of the capital stock of this Company, either that now issued and outstanding, or which may hereafter be issued shall be sold to other than a lot owner  *  *  *."

Notwithstanding the expiration on January 1, 1906, of the covenants, restrictions and special provisions contained in the deeds of conveyance, the same were observed until October 13, 1933, when the company and all the then owner-stockholders entered into an agreement which was recorded on December 14, 1933, and which, among other things, extended the covenants, restrictions and regulations contained in the original deeds to January 1, 1948.  It was there provided that an annual assessment of $2,500 was to be levied and assessed by the company against the stockholders collectively and their respective successors in interest as " owners of the lots in said tract, for the maintenance, repair and improvement of the roads, water supply, drainage, buildings, shore facilities and other betterments and common uses of said tract."  Provision was made for the levying of an additional annual assessment in an amount equal to the annual real estate taxes and local improvement assessments, assessed and to be assessed by the taxing authorities of the town of Glen Cove against those portions of the original tract still owned by the company.  It was provided moreover that an apportionment of the total of such tax was to be made in proportions of multiples of 350ths — which multiples were equal to the number of shares of each stockholder.

The company levied and collected all assessments pursuant to the foregoing agreement for the years through 1938. It made an assessment for the year 1939, which became due in 1940. It paid the first half of the Glen Cove taxes in the sum of $922.52 by check dated January 10, 1940, but failed to pay the second half of such taxes amounting to $922.51. The company made no further levies after the levy of 1939, and the minutes of a meeting held on July 18, 1940, record among other things the following: '' There was a lengthy discussion on the subject of payment of assessments for taxes and those present decided that inasmuch as there were three pieces of property on which their respective proportion of taxes on colony property were not being paid it was decided by those present that they would not contribute further to the payment of taxes on company property.''

After the levy of 1939 the company never made, levied nor collected any assessment to defray municipal taxes for subsequent years. Accordingly, on April 15, 1941, the company's properties were sold at a public tax sale by the City of Glen Cove. At a meeting of the company, held on June 16, 1941, the president reported that the beach property had been sold for taxes either to North Country Colony or Rudolph Loening (the plaintiff herein). On August 5, 1943, the taxing authorities of the city of Glen Cove delivered to the plaintiff three tax deeds conveying to him the premises set forth in the complaint. On December 18, 1946, the company was dissolved by a certificate filed with the Secretary of State.

The plaintiff contends that the original deeds of the company did not grant any easement to the grantees to walk upon and enjoy the beach or waterfront, and assigns three reasons for such conclusion.

The first is to the effect that the words of grant in such deeds differentiated between rights and easements; that where perpetual easements were intended, they were so designated, to wit: '' a perpetual right or easement, in common with all other present and future owners of lots within said tract, to walk, ride or drive over, and otherwise enjoy the roads, drives and public grounds which have been or which may hereafter be established by said Grantor for the common benefit of said lot-holders, * * * ''; that where other rights were intended, only a '' naked right '' was granted, to wit: '' and the right to walk upon, to use for boating and bathing purposes, and otherwise to enjoy the beach or water-front of the tract upon Long Island Sound and Hempstead Bay, reasonably and with due regard to the rights of others * * *.'' In other words, the plaintiff has split the

grant into two parts, urging that the opening words " a per-petual right or easement " apply to the words " to walk, ride or drive over, and otherwise enjoy the roads, drives and public grounds " but do not apply to " the right to walk upon, to use for boating and bathing purposes, and otherwise to enjoy the beach or water-front * * *." The court is unable to thus construe the grant. Obviously, the words " to walk, *ride or drive over* " (italics furnished) the roads, drives and public grounds could not logically apply to the " beach or waterfront of the tract." For that reason, the conjunction " and " was used to differentiate between the enjoyment of the different areas. It does not follow, however, that the use of the conjunction and the failure to repeat the words " perpetual right or easement " immediately preceding the words " to walk upon, to use for boating and bathing purposes, and otherwise to enjoy the beach or water-front of the tract " indicated any intention to grant less than a perpetual easement to the latter rights. It seems clear that the words " perpetual right or easement " were intended to designate without differentiation all rights contained in the grant. Indeed, the last part of the paragraph which contains the grant speaks of " the use or enjoyment of said roads, beaches and grounds " without differentiation between the " roads " and " grounds " on the one hand, and the " beaches " on the other.

The second reason for plaintiff's contention that no easement was created is that there was an insufficient description of the servient tenement, in the absence of any delineation or designation on the filed Map No. 91 of any land as either beach or water-front. To some extent that is true, since there was no express designation on said filed Map No. 91 of a beach or park as such. Said map, nonetheless, shows a beach between the water and the road marked " Shore " upon which lots numbered 6, 7, 19 and 20 border. This area between the road and the water was never conveyed by the company, and there is proof in the record which shows that this was part of the land retained by said company to which the tax deeds gave title to the plaintiff. Unquestionably, this area was " the beach or waterfront of the tract upon Long Island Sound and Hempstead Bay " with respect to which the company granted the easement " to walk upon, to use for boating and bathing purposes, and otherwise to enjoy * * *."

The third reason urged by the plaintiff is that the right to the beach or waterfront was a personal right, attaching to the stock-holder-owners and not an easement appurtenant to the proper-ties. There is no merit to this contention. It is indeed true that

there was an arrangement between the company and the stockholders regulating their right to participate in the facilities maintained by the company, which consisted of clubhouse, boat and bath houses, dock, roads, sewage disposal plant, lifeguards, etc., which arrangement may be termed as personal. However, it does not follow that this arrangement wiped out the perpetual easements which were granted in the deeds to the several owners of the lots conveyed by the company.

Neither does the court find any merit in the claim of the plaintiff that such perpetual easements were lost by abandonment or by breach of conditions which qualified the use of the beach or waterfront.

The claim of abandonment is predicated upon the entry in the minutes of the company's July 18, 1940, meeting, which showed that among those present were the intervener's predecessors, Henry W. J. Bucknall and G. Stafford Bucknall, and that it was decided " by those present that they would not contribute further to the payment of taxes on company property." However, " Abandonment in law depends upon the concurrence of two and only two factors; one, an intention to abandon or relinquish; and two, some overt act, or some failure to act, which carries the implication that owner neither claims nor retains any interest in the subject matter of the abandonment " (*City of Binghamton* v. *Gartell*, 275 App. Div. 457, 460). The action of the stockholders of the company as referred to in the corporate minutes of July 18, 1940, do not spell out such an abandonment. The uncontroverted proof is that the intervener's predecessors in title continued paying their prorata share of real estate taxes and maintenance charges subsequent to the corporate meeting of July 18, 1940, as well as during and subsequent to the year when the tax default took place. Moreover, the company continued to operate and the owners continued to use the facilities of the community property until the plaintiff took possession under his tax deeds in August, 1943. Therefore, it cannot be said that there was intent or overt act from which abandonment of the easements created in the deeds could be spelled out.

The plaintiff urges that the right to use the beach or waterfront was qualified on conditions, the breach of which terminated such right. It is urged that the very grant of the easements expressly provided that it was made " under such regulations as may from time to time be reasonably established by the Grantor or its successors * * * " and that the agreement of October 13, 1933, which was joined in by the company and all its stockholders, extended such regulations to 1948. It is urged that the essence of the regulations and of the right to use the beach

entailed the correlative obligation to pay the taxes thereon, and any failure to pay such taxes was a breach of the regulations. However, as already stated above, the easements granted to the owners in their respective deeds were not wiped out by the arrangement of such owners with the company, in their capacity as stockholders, for the purpose of operating their colony and enjoying the exclusive facilities connected therewith. Consequently, the nonpayment by the company of the tax did not impair the easements created in the deeds. The fact that it is not clear from the evidence, whether the intervener's property was assessed with the value of the easements included or excluded, is immaterial to the issues presented herein. The fact of the matter is, according to the testimony, that the assessors were not concerned with these easements.

The court is unable to agree with the plaintiff that the easements covering the beach or waterfront were extinguished upon the company's loss of title, by the conveyance of tax deeds in 1943. As already pointed out, it is settled law that an easement acquired prior to a tax lien is not subject thereto, nor is it cut off by a foreclosure of the tax lien or a deed from the city or county treasurer (*Wilkinson* v. *Nassau Shores, Inc.*, 86 N. Y. S. 2d 603, *supra,* and the authorities cited at page 610). The company, which has now ceased to exist, made no levy or assessment under the regulations, subsequent to 1939, upon which it could claim a forfeiture of rights on the part of its stockholders, and it is difficult to perceive any legal basis for concluding that the plaintiff has such right under the tax deeds. Thereunder he acquired title to the property which was owned by the company, by reason of the latter's failure to pay the taxes assessed to it, but such title was still subject to the perpetual easements created in the original deeds to the intervener's predecessors.

The first cause of action asserted in the plaintiff's amended complaint, to bar claims under section 500 of the Real Property Law, is, accordingly, dismissed on the merits.

As to the second cause of action, judgment is directed declaring the rights of the parties hereto, not inconsistent with the views herein expressed. It has been held that a complaint in an action for a declaratory judgment will not be dismissed merely because, upon the facts stated, the plaintiff is not entitled to the declaration of rights as he *claims* them to be. The court will retain jurisdiction and " exercise its power to declare the rights and legal relations of the parties whatever they may be." (*Rockland Light and Power Co.* v. *City of New York*, 289 N. Y. 45, 51.)

Submit judgment on notice.