John H. Finn, J.
In this action under article 15 of the Real Property Actions and Proceedings Law, the plaintiffs seek a determination of claims to the real property formerly known as “ Jenks Court ” designated on the tax map of the City of New York for Kings County as Block 7511D, Lots 106 and 204.
All the plaintiffs claim an easement or right of way over Jenks Court, which is situated between Neptune and Guider Avenues and extends from East 11th to East 12th Streets; a strip of land 428 feet more or less running east to west approximately 25 feet in width.
The answer of the defendant Genoa asserts a counterclaim against all plaintiffs, and she has cross-claimed against the other named defendants who comprise the balance of the owners of real property which fronted on Neptune Avenue between East 11th and East 12th Streets.
The complaint also asks monetary damages against Genoa and Scala Contracting Co., Inc., for damages to certain fences and other property claimed to be owned by the respective plaintiffs, which property was damaged or destroyed when Scala, the contractor, employed by Genoa demolished the fences and other encumbrances on Lots 106 and 204.
Defendant Sutterman makes a cross claim in her answer against Genoa and seeks an adjudication that she has an easement and right of way over “ Jenks Court ” and perscriptive rights thereto; in addition she seeks a determination to compel Genoa either to remove a fence or maintain gates in the rear of the Sutterman property at 139 Neptune Avenue and give the defendant Sutterman access to Jenks Court.
In 1921 Associated Realty Improvement Company (hereinafter “Associated”), acquired the title to the real property *504 between East 11th and East 12th Streets with frontage along Neptune Avenue. The rear boundary line of the tract was the southerly line of Coney Island Creek. In March, 1921 Associated had filed a subdivision map which delineated the so-called Jenks Court, running easterly to westerly from East 11th to East 12th Streets. This map projected a development of 21 plots, all of which fronted on Neptune Avenue.
In May, 1922 Associated conveyed by metes and bounds without reference to the filed map a portion of original tract to Shoreland Realty Company (hereinafter “Shoreland”), and the grantee proceeded to develop the tract by the delineation of 18 separate lots for home sites in apparent disregard óf the original layout. The homes built and sold by Shoreland all fronted on Neptune Avenue with no entrances on Jenks Court. In effect and for all practical purposes, Shoreland abandoned whatever may have been the planned layout as shown on the map filed by Associated, despite a reservation in the deed from Associated to establish Jenks Court as a road 17 feet wide with sidewalks on the north and south sides and the right to maintain water, sewer lines, and other utility lines in Jenks Court.
The plaintiff Sterrer in 1946 acquired title to a parcel which fronted on Guider Avenue and extended to the northerly line of Jenks' Court with a quitclaim deed from the grantor as to the user of the area in Jenks Court.
All property of the other plaintiffs, and the defendant Sutterman fronted on Neptune Avenue, and was bounded along the southerly line of Jenks Court.
Guider Avenue became a public street subsequent to the filing of a subdivision map by Associated, but Jenks Court never became part of the New York City street system. The bed of Jenks Court, so-called, was on the tax map of the city as lots 106 and 204 in Brooklyn 7511D.
There was no user of Jenks Court as a street; and there was no single conveyance of any property by the separate lot numbers shown on the filed map to indicate recognition of the proposed street areas. Nor is there any evidence of an offer of the dedication of the area as a street and, accordingly, there could be no acceptance by the city to make Jenks Court a part of the street system of Brooklyn.
In fact, most of the property owners of the houses which fronted on Neptune Avenue, prolongated the easterly and westerly boundary lines of their respective lots (18 instead of the original 21 plots) by erecting fences, hedges,' clothes, poles, or *505 utilizing the area for gardens across Jenks Court, in complete disregard of any claim, easement or right of way for ingress and egress, so much so that the area was practically impassable from East 11th to East 12th Street. The field notes of the surveyor called by defendant Genoa and the survey which is marked in evidence, showed that the owners of 12 of the 18 plots extended their easterly and westerly boundary lines by the erection of 17 separate fences, clothes poles and other obstructions.
The use of the Jenks Court area or the bed of what may have been proposed as a street by these individual owners, was completely contrary to any recognition of the rights of access now claimed, and this use by the respective owners continued for many years despite the fact that Jenks Court was on the tax rolls1 of the City of New York and taxed as lots 106 and 204 in Block 7511D.
Tax arrears accumulated on these two tax lots and they were included in an in rem foreclosure action brought by the City of New York on July 12, 1954. This resulted in a judgment entered April 22, 1955 which vested the complete title in the city (Administrative Code of City of New York, tit. D, ch. 17).
Genoa acquired from the City of New York several tax lots all in Block 7511, having been the successful bidder at public auction sales which followed judgments entered in in rem foreclosure proceedings.
By a deed dated April 15-, 1958, she acquired Lot 138; another dated November 30, 1960 conveyed Lots 134 and 136. In a conveyance dated October 30, 1961, the city deeded to Genoa the title it had acquired by a foreclosure to Lots 106, 126, 128, 130 and 204.
Thus, Genoa succeeded to the full title that the City of New York had to Lots 106 and 204 which were in part of Jenks Court.
In 1962, Genoa by written demand requested the plaintiffs and the defendant Sutterman to remove the obstructions from Lots 106 and 204. Upon the refusal and failure by the plaintiffs and the defendant Sutterman to comply with the request, and after due written notice, Genoa hired the defendant Scala to remove the obstructions.
This essentially, is the genesis and background of this lawsuit.
The question of whether or not an easement exists over adjoining property is one of intention in the light of all the circumstances pertinent to the particular case (Matter of City of New York [Northern Blvd.], 258 N. Y. 136).
*506 In Wilkinson v. Nassau Shores (1 Misc 2d 917, affd. without opn., 278 App. Div. 970, mod. 304 N. Y. 614) the factual situation was entirely different than the case at bar.
In Wilkinson there was a filed map on which there was depicted a residential development with an area designated as the community bathing beach, with access roads to the beach, and a clear indication that there was to be an easement in favor of those who purchased lots in the development. The separate lots were sold with specific reference to the filed map on which certain areas were shown as proposed squares, parks and beaches. In addition, representations were made by the developer that such areas would be used exclusively by the individual lot owners. Although no language in the deed spelled out an easement in so many words, the court found the lot owners had an easement by implication.
The court at Special Term (1 Misc 2d 917, 920) said: “No express easement to the use of the beach was granted in the deeds to the lot owners. Therefore whatever easements may exist in the beach arise solely by implication. Hence the question is one of intention to be answered, like questions of intention generally, in the light of all the circumstances. (Matter of City of New York [Northern Blvd.], 258 N. Y. 136, 147; Erit Realty Corp. v. Sea Gate Assn., 259 N. Y. 466, 470; Fieder v. Terstiege, 56 N. Y. S. 2d 837, 843, affd. 273 App. Div. 982.) ” And, also, (pp. 922-923) the court restated the general rule and basic principle: “ In addition, it is well settled that where a developer of land sells lots with reference to a map on which squares or parks or beaches are designated and representations are made by the developer that such parks or squares or beaches are for the use of the lot owners, the purchasers of such lots acquire an easement in such parks, squares or beaches by implication and representation. As was said by the court in Williamson v. Salmon (105 Misc. 485, 487, affd. 196 App. Div. 922, affd. 233 N. Y. 657): ‘ A party who sells a lot according to a map should be held to his implied covenant of an easement in all the streets and parks shown on the map, so far as their existence adds to the value of the property sold. Wyman v. City of New York, 11 Wend. 486; Tibbits v. Cumberson, 39 Hun 456; Kerrigan v. Backus, 69 App. Div. 329; Kelly v. Penfield, 67 Misc. Rep. 272, 133 App. Div. 367; Child v. Chappell, 9 N. Y. 246, 257; Taylor v. Hepper, 2 Hun, 646; 62 N. Y. 649. The case of Lord v. Atkins, 138 N. Y. 184, and similar cases confirm the easement in Bietry Beach park to the lake shore, including the 150-foot plot ’ ”.
*507 On the question of whether or not the easement would be cut off by the tax sale, Hooley, J., said (p. 924): “ The second point to be determined is whether the easement of the defendants was cut off by the tax sale. It is well settled that an easement acquired prior ° to a tax lien is not subject thereto, nor does a foreclosure of a tax lien or a deed from the county treasurer cut off the easement. (Tax Lien Co. of N. Y. v. Schultze, 213 N. Y. 9, 12, 13; Jackson v. Smith, 153 App. Div. 724, affd. 213 N. Y. 630; Harris v. Curtis, 139 App. Div. 393, 396, affd. 211 N. Y. 573.) ”
The determination of the court at Special Term was unanimously affirmed by the Appellate Division.
The modification by the Court of Appeals (304 N. Y. 614) did not alter the basic principles.
Wilkinson, on which the plaintiffs rely, is not applicable to the case at bar because (a) here there was no sale by lot numbers or reference to a filed map; (b) no easement was granted, nor could one be implied because all the owners in the instant action utilized either Guider Avenue or Neptune Avenue as the means of ingress and egress, with no use of, or access to or from Jenks Court.
The case of Holden v. Palitz (1 A D 2d 685) was one where the easement was created by expressed reservation in the deed and therefore is wholly inapposite to the case at bar. In the Appellate Division opinion the court said (p. 686): ‘ ‘ The easement, if any was created, was not one of necessity, but was created by express reservation in the deeds to the county of Westchester. The rule ordinarily applied in a case involving an easement created by grant is that such an easement may be extinguished only by deed, by adverse possession, or by some act showing a clear intention to abandon it. (Conabeer v. New York Central & Hudson Riv. R. R. Co., 156 N. Y. 474; Naight v. Littlefield, 147 N. Y. 338, 344; Welsh v. Taylor, 134 N. Y. 450.) ”
In Pagano v. Kramer (21 N Y 2d 910) the court found there was an easement by prescription and the issue was whether a foreclosure for tax arrears extinguished the easement since the tax levy predated any prescriptive easement the plaintiff may have established. The Court of Appeals said that the language in the deed that the conveyance was subject to a private right of way could not create an easement, but it did preserve the easement by prescription which might otherwise have been extinguished. The Appellate Division (25 A D 2d 887) had ruled there was evidence to establish a prescriptive right to the use of portions of the lane in dispute.
*508 In the present case there is no evidence to establish a prescriptive right to a use of Jenks Court.
Gerbig v. Zumpano (7 N Y 2d 327) is cited here by both sides and does have some pertinency, but it provides little nourishment for the plaintiffs.
In Gerbig, the separate parcels were described by specific lot numbers shown on a filed map with a layout of streets or lanes, and the parcels were described with reference thereto. In that case, as here, the plaintiff Grerbig had acquired the fee to specific tax lots from the City of New York after an in rem foreclosure proceeding.
Burke, J., writing for the unanimous Court of Appeals, said at page 330:
“ The trial court, recognizing the appropriate circumstances, found that an implied easement by grant was in fact originally created in favor of the land now owned by the defendant. (See Matter of City of New York [Northern Blvd.], 258 N. Y. 136; Lord v. Atkins, 138 N. Y. 184; Fiebelkorn v. Rogacki, 280 App. Div. 20, affd. 305 N. Y. 725 ; Weil v. Atlantic Beach Holding Corp., 1 N Y 2d 20; Rose v. Indian Park Assn., 3 A D 2d 274; 3 Powell, Real Property, par. 409). However, while aware of the legal distinction, the court equated this easement by grant with an easement by necessity, and held that: ‘ [L]and titles should not be subject to implied, as distinguished from express, encumbrances, unless such burdens are reasonably necessary for the enjoyment and use of neighboring properties * * * Since the easement was implied so that purchasers of interior lots may have access to and from their land, the implication ceases where a public highway has been built affording both parties free and untrammeled approach to and from that highway. ’
“We reach a different conclusion. It is the law of this State that an easement created by grant, express or implied, can only be extinguished by abandonment, conveyance, condemnation, or adverse possession. (See, e.g., Holloway v. Southmayd, 139 N. Y. 390, 402; Johnson & Co. v. Cox, 196 N. Y. 110, 121; Fiebelkorn v. Rogacki, supra, pp. 21-22).
“ The mere fact that this easement might originally have been created out of necessity does not alter the means by which it was created, i.e., by grant, and as such it remains as inviolative as the fee favored by the grant, unless, of course, conveyed, abandoned, condemned or lost through prescription.”
The court continued with the following language at page 331:
*509 “It is clear that nonuser alone, no matter how long continued, can never in and of itself extinguish an easement created by grant (Welsh v. Taylor, 134 N. Y. 450; 3 Powell, Real Property, par. 423, p. 491; Walsh, The Law of Property, [2d ed.], § 305). In order to prove an abandonment it is necessary to establish both an intention to abandon and also some overt act or failure to act which carries the implication that the owner neither claims nor retains any interest in the easement (Loening v. Red Spring Land Co., 198 Misc. 151, affd. 277 App. Div. 1050, motions for reargument and for leave to appeal denied 277 App. Div. 1151, affd. 302 N. Y. 934). Furthermore, acts evincing an intention to abandon must be unequivocal. They must clearly demonstrate the permanent relinquishment of all right to the easement (Welsh v. Taylor, supra). ‘ The mere use of the easement for a purpose not authorized, the excessive use or misuse, or the temporary abandonment thereof, are not of themselves sufficient to constitute an abandonment. ’ (Roby v. New York Cent. & H. R. R. R. Co., 142 N. Y. 176, 181.) In Josh v. Nobile (1 Misc 2d 396) for example the court refused to find an abandonment although there was a long period of nonuse coupled with obstructions placed on the property.
‘ ‘ In this case the encroachments may either be found to show a present intention not to use the easements so as to unequivocally demonstrate an abandonment or a deferred use which would be consistent with a reliance upon the continued existence of a property right of way. ’ ’
Here there was an abandonment of the use of Jenks Court for ingress and egress, if such use there ever existed, and there is no proof that such use was made of this so-called street area.
On the facts and the law, this court finds there was no easement in Jenks Court either by expressed grant, by implication, or by any prescriptive right.
In Tarolli v. Westvale Genesee (6 N Y 2d 32), Desmond, J., writing for the unanimous court, said the following at pages 34 and 35: “ One who claims an implied easement has the burden of establishing all the facts necessary to support it (Real Property Law, § 251; Zeiger v. Interborough R. T. Co., 254 App. Div. 908, affd. 280 N. Y. 516; Root v. Conkling, 199 App. Div. 90, 93). We do not have here the situation of a grantor subdividing his property and selling lots bounding on a street shown on his subdivision map (Wiggins v. McCleary, 49 N. Y. 346; Matter of Opening of Eleventh Ave., 81 N. Y. 436; Matter of Opening of St. Nicholas Terrace, 143 N. Y. *510 621). Nor is this a case where a private right of way has been in use for many years and the surrounding circumstances show that it must have been the intent of the parties to give the grantee continued use of the passageway (Ranscht v. Wright, 9 App. Div. 108, affd. 162 N. Y. 632). Merely bounding premises by a road (for purposes of description like using any other mark, or monument) ‘ is very different from selling by reference to a map or plat on which the grantor has laid out streets ’ (King v. Mayor of City of New York, 102 N. Y. 171, 175). The controlling authorities say that the claim of an easement solely by implication usually raises a question of intent to be determined in the light of all the circumstances, and that running a boundary along a road is one such circumstance only (Matter of City of New York [Northern Blvd.], 258 N. Y. 136, 147, 148, 149; Erit v. Sea Gate Assn., 259 N. Y. 466, 470; Matter of City of New York [Harrison Ave.], 267 N. Y. 64, 78).”
This is particularly pertinent where the respective parcels in each instance in the case at bar were bounded by the southerly line of Jenks Court and fronted on Neptune Avenue.
In Lee v. Farone (261 App. Div. 674), the court said, at page 676: “Under a valid tax deed from the time of its delivery the purchaser is clothed, not merely with the title of the person who had been assessed for taxes, and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars and extinguishes all prior titles and incumbrances of private persons and all equities arising out of them. (Turner v. Smith, 14 Wall. 553; Hefner v. Northwestern Life Ins. Co., 123 U. S. 747, 751, 8 S. Ct. 337, 338.) ”
This was affirmed without opinion in 288 N. Y. 517.
On a consideration of all the evidence, including all of the exhibits, this court concludes that the defendant Genoa has a valid title to Lots 106 and 204 in Block 7511.
The complaint is dismissed as to the defendants Genoa and Scala, and the cross claim of the defendant Sutterman is also dismissed.
The claim of Scala against Genoa is dismissed.