In the Matter of the Application of the CITY OF NEW YORK, Appellant and Respondent, Relative to Acquiring Title to Real Property Required for the Opening and Extension of Northern Boulevard in the Borough of Queens.

CHRISTIAN REIS, Appellant; MARGARET MAHONEY et al., Respondents.

(Argued December 1, 1931; decided January 5, 1932.)

*Rodman Richardson* for Christian Reis, appellant.

*Arthur J. W. Hilly, Corporation Counsel (Joel J. Squier* and *William B. R. Faber* of counsel), for City of New York, appellant and respondent. The damage parcels have been burdened with private easements of light, air and access. (*Matter of City of New York [Johnson Ave.]*, 135 App. Div. 630; 198 N. Y. 505; *Matter of City of New York [Edgewater Road]*, 138 App. Div. 203; 199 N. Y. 560; *Lord* v. *Atkins*, 138 N. Y. 184; *Hennessy* v. *Murdock*, 137 N. Y. 317; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Taylor* v. *Hopper*, 62 N. Y. 649; *White's Bank of Buffalo* v. *Nichols*, 64 N. Y. 65; *Matter of City of New York [Sedgwick Ave.]*, 213 N. Y. 438; *Matter of Adams*, 141 N. Y. 297; *Matter of City of New York [West 177th St.]*, 135 App. Div. 520; 145 App. Div. 918; 203 N. Y. 570; *Matter of Village of Olean* v. *Steyner*, 135 N. Y. 341; *Matter of Mayor of New York*, 114 App. Div. 912; 188

N. Y. 581.) Certain of the damage parcels being burdened with private easements of light, air and access awards representing the fee subject to such easements should have been made therefor instead of full unincumbered fee value awards. (*Matter of City of New York [Edgewater Road]*, 138 App. Div. 203; 199 N. Y. 560; *Matter of City of New York [Roosevelt Ave.]*, 186 App. Div. 457; *Matter of City of New York [Decatur St.]*, 196 N. Y. 286; 133 App. Div. 321; *Matter of Schneider*, 136 App. Div. 444; 199 N. Y. 581; 173 App. Div. 709; 223 N. Y. 566; 248 U. S. 275; *Matter of Hamburger*, 165 App. Div. 526; 216 N. Y. 643; *Matter of City of New York [Titus St.]*, 152 App. Div. 752; *Matter of City of New York [Carroll St.]*, 137 App. Div. 39; *City of Buffalo* v. *Pratt*, 131 N. Y. 293; *Matter of City of New York [West 177th St.]*, 135 App. Div. 520; 145 App. Div. 918; 203 N. Y. 570; *Matter of City of New York [Johnson Ave.]*, 135 App. Div. 630; 198 N. Y. 505; *Matter of City of New York [Grand Boulevard]*, 160 App. Div. 80; 212 N. Y. 538.) The instrument executed by the claimants herein, purporting to release the easements of light, air and access in, to and over certain damage parcels, is ineffectual to extinguish such easements created by grant in their favor by their common grantor. (*Matter of Department of Public Parks*, 53 Hun, 556; *Bridges* v. *Wyckoff*, 67 N. Y. 130; *Matter of City of New York [Sedgwick Ave.]*, 213 N. Y. 438; *Nichols Copper Co.* v. *Connolly*, 208 App. Div. 667; 240 N. Y. 596; *People* v. *Kellogg*, 67 Hun, 546.) The agreement purporting to release and extinguish the easements of light, air and access created by grant was not made and entered into in good faith but was made during the pendency of the proceeding and solely and purposely for the proceeding and to enhance the damages to be made herein for certain parcels and to mulct the city, its taxpayers and the persons assessed in the proceeding. (*Matter of City of New York [Briggs Ave.]*, 196 N. Y. 255; *Matter of City of New York [Hawkstone St.]*, 137 App. Div.

630; 199 N. Y. 567; 2 Lewis on Eminent Domain [3d ed.], 888, 889; *Matter of Department of Public Parks,* 53 Hun, 556; *Bridges* v. *Wyckoff,* 67 N. Y. 130; *Matter of City of New York* [*Sedgwick Ave.*], 213 N. Y. 438.) The exchange of quitclaim deeds purporting to release and extinguish the easements of light, air and access created by grant in, to and over certain damage parcels did not have the effect of releasing and extinguishing such easements. (2 Lewis on Eminent Domain [3d ed.], 888, 889; *Matter of Department of Public Parks,* 53 Hun, 56; *Bridges* v. *Wyckoff,* 67 N. Y. 130; *Matter of City of New York* [*Sedgwick Ave.*], 213 N. Y. 438; *Nichols Copper Co.* v. *Connolly,* 208 App. Div. 667; 240 N. Y. 596; *People* v. *Kellogg,* 67 Hun, 546.) The quitclaim deeds purporting to release and extinguish the easements of light, air and access, which were created by grant, were not made and entered into in good faith but were made during the pendency of the proceeding and solely and purposely for the proceeding and to unjustly enhance the damages to be made herein for certain parcels and to unjustly enrich themselves at the expense of the city, its taxpayers and the owners of land assessed in the proceeding. (*Matter of City of New York* [*Briggs Ave.*], 196 N. Y. 255; *Matter of City of New York* [*Hawkstone St.*], 137 App. Div. 630; 199 N. Y. 567; 2 Lewis on Eminent Domain [3d ed.], 888, 889; *Matter of Department of Public Parks,* 53 Hun, 556; *Bridges* v. *Wyckoff,* 67 N. Y. 130; *Matter of City of New York* [*Sedgwick Ave.*], 213 N. Y. 438; *Nichols Copper Co.* v. *Connolly,* 208 App. Div. 667; 240 N. Y. 596; *People* v. *Kellogg,* 67 Hun, 546.) The appeal of Reis has not been perfected by the filing and service of an undertaking as required by section 593 of the Civil Practice Act, and the city of New York has not waived its right to such an undertaking. (*Zolezzi* v. *Massachusetts Banking & Ins. Co.,* 251 N. Y. 540.)

*Charles Lamb* for Margaret Mahony et al., respondents. The filing of a property map, pursuant to section 1540

of the New York City Charter, and section 334 of the Real Property Law, does not constitute a dedication and acceptance of the land for street purposes. (*Matter of City of New York* [*East 177th St.*], 239 N. Y. 119.) The damage parcels of claimants were not burdened with private easements at the time title vested in the city of New York. (*Matter of City of New York* [*East 177th St.*], 239 N. Y. 119.)

*Thomas P. de Graffenreid* for Michael Iorio et al., respondents. There were no easements. (*Matter of Brook Avenue*, 40 App. Div. 519; *Matter of 116th Street*, 1 App. Div. 436; *United States* v. *Appleton*, 1 Sumn. 500; *Matter of City of New York* [*West 177th St.*], 135 App. Div. 523; *Matter of City of New York* [*East 177th St.*], 239 N. Y. 119; *Reis* v. *City of New York*, 188 N. Y. 58; *Drabinsky* v. *Sea Gate Assn.*, 239 N. Y. 321; *B'ggs* v. *Sea Gate Assn.*, 211 N. Y. 482.) If there were easements, they were entirely extinguished by the deed of release and extinguishment. (*Drabinsky* v. *Sea Gate Assn.*, 239 N. Y. 321; *Matter of City of New York* [*East 177th St.*], 239 N. Y. 119; *Reis* v. *City of New York*, 188 N. Y. 58; *Gates* v. *De La Mare*, 142 N. Y. 307; *Matter of Sea Beach Ry. Co.*, 148 N. Y. Supp. 1080; 121 App. Div. 907; 196 N. Y. 533; *Woolf* v. *Leicester Realty Co.*, 134 App. Div. 484; *Bolton* v. *Seamen's Bank*, 99 App. Div. 581; *Terry* v. *Marx Realty & Improvement Co.*, 130 Misc. Rep. 406; *Utter* v. *Richmond*, 112 N. Y. 610.)

*Henry Herz* for Thomas Cavanagh et al., respondents. The approval of maps by the Board of Estimate and Apportionment and the filing thereof did not constitute an acceptance of the offer of dedication, and no public easements existed as an incumbrance on claimants' property at the time of vesting of title. (*Matter of City of New York* [*East 177th St.*], 239 N. Y. 119; *Matter of Adams*, 141 N. Y. 297; *Matter of Village of Olean* v. *Steyner*,

135 N. Y. 341; *Matter of City of New York* [*Ave. D*], 200 N. Y. 536; *Foster* v. *Scott*, 136 N. Y. 577; *Matter of Rhinelander*, 68 N. Y. 105.) The damage parcels of claimants were not subject to either public or private easements on the date of vesting of title. Easements, if any, existing by reason of filing of map and sales of lots, having been released by agreement of owners of property in block abutting on damage parcels, claimants were entitled to unincumbered fee value thereof. (*Biggs* v. *Sea Gate Assn.*, 211 N. Y. 482; *Drabinsky* v. *Sea Gate Assn.*, 239 N. Y. 321; *Matter of City of New York* [*East 177th St.*], 239 N. Y. 119; *Reis* v. *City of New York*, 188 N. Y. 58; *Gates* v. *De La Mare*, 142 N. Y. 307; *Utter* v. *Richmond*, 112 N. Y. 610; *Matter of Sea Beach Ry. Co.*, 121 App. Div. 907; 196 N. Y. 533; *Trustees Can. Academy* v. *McKechnie*, 90 N. Y. 618; *Matter of Van Etten* v. *City of New York*, 226 N. Y. 483; *Matter of City of Rochester*, 208 N. Y. 188; *Matter of City of New York* [*Titus St.*], 139 App. Div. 238; *Snell* v. *Levitt*, 110 N. Y. 595; *Matter of City of New York* [*Ludlow Ave.*], 164 App. Div. 839; *Andrews* v. *Cohen*, 221 N. Y. 148; *Naccash* v. *Hildansid Realty Corp.*, 140 Misc. Rep. 730; *Lathrop* v. *Tytle*, 84 Misc. Rep. 161; *Fritz* v. *Thompkins*, 18 Misc. Rep. 514; 168 N. Y. 524.)

*Nathan L. Goldstein, George Schenker* and *Irving S. Dorf* for Hubert B. Stokes, respondent. The damage parcel of claimant is not burdened with easements of light, air and access. (*Lord* v. *Atkins*, 138 N. Y. 184; *Reis* v. *City of New York*, 188 N. Y. 58; *Matter of City of New York* [*Sedgwick Ave.*], 213 N. Y. 438; *Matter of City of New York* [*Roosevelt Ave.*], 186 App. Div. 457; *Matter of City of New York* [*East 177th St.*], 239 N. Y. 119; *Matter of City of New York* [*64th St.*], 183 App. Div. 708; *Matter of Adams*, 141 N. Y. 297; *Weeks* v. *N. Y. W. & B. Ry. Co.*, 207 N. Y. 190; *Nichols Copper Co.* v. *Connolly*, 208 App. Div. 667; 240 N. Y. 596; *New York Investors, Inc.*, v. *Manhattan Beach Bathing Parks Corp.*, 229 App. Div. 593; 256 N. Y. 162.)

*Millard F. Kuh* for Rosewill Realty Corporation et al., respondents. Land burdened with private easements and in the same ownership as that of the abutting property is entitled to a substantial award for damages when taken in a condemnation proceeding. (*City of Buffalo* v. *Pratt*, 131 N. Y. 293; *Matter of City of New York* [*Sedgwick Ave.*], 213 N. Y. 438.) Damage parcels of claimants were not dedicated to the public for street use. (*Matter of City of New York* [*East 177th St.*], 239 N. Y. 119; *Matter of City of New York* [*Wallace Ave.*], 222 N. Y. 139.)

*Leffert Holz* and *Benjamin F. Schreiber* for Irving Estates, Inc., respondent. The damage parcel of claimant was never dedicated by the owners or accepted by the city for street purposes, nor were any public easements created over the parcel. (*Matter of City of New York* [*East 177th St.*], 239 N. Y. 119.)

*Max Schoengold* and *Abraham Greenberg* for Hulong Enterprises, Inc., respondent.

*Eugene V. Daly* for Addie E. Gibbons et al., *amici curiæ*. No dedication or grant of either public or private easements is shown and none may be inferred. (*Matter of City of New York* [*East 177th St.*], 239 N. Y. 119; *Matter of West 172d St.*, 171 App. Div. 242; *Matter of Brook Ave.*, 40 App. Div. 519; 161 N. Y. 622; *Matter of Hunter*, 163 N. Y. 548; *City of Buffalo* v. *Pratt*, 131 N. Y. 293.)

*Rodman Richardson* for Louis Reis, *amicus curiæ*. The proceeding to condemn is in subordination to and recognition of the legal title, and the filing of the Broadburne map two years after the beginning of the proceeding conferred no easement or right on the city, the public or other owners on said map. (*Matter of City of New York* [*East 177th St.*], 239 N. Y. 119; *Matter of Brook Ave.*, 40 App. Div. 519; *Matter of City of New York* [*East River*

*Park*], 184 App. Div. 509; *Nichols Copper Co.* v. *Connolly*, 208 App. Div. 676.)

*H. Stewart McKnight, County Attorney (Robert W. Duvall* and *Charles E. Clarke* of counsel), for Nassau County, *amicus curiæ*. The owner of land condemned by a city for street purposes over which easements of light, air and access exist is entitled only to a nominal sum. (*Matter of City of New York [Johnson Ave.]*, 135 App. Div. 630; 198 N. Y. 505; *Matter of City of New York [Edgewater Road]*, 138 App. Div. 203; 199 N. Y. 560; *Lord* v. *Atkins*, 138 N. Y. 184; *White's Bank of Buffalo* v. *Nichols*, 64 N. Y. 65; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Reis* v. *City of New York*, 188 N. Y. 58; *Taylor* v. *Hopper*, 62 N. Y. 649; *Wyman* v. *New York*, 11 Wend. 486; *Finelite* v. *Sinnot*, 125 N. Y. 683; *Peoria G. & E. Co.* v. *Dunbar*, 234 Ill. 502; *Masterson* v. *Munro*, 105 Col. 431; 2 Devlin on Deeds, §§ 1020, 1020-a; *Bridges* v. *Wyckoff*, 67 N. Y. 130; *Matter of Department of Public Parks*, 53 Hun, 556; 2 Lewis on Eminent Domain [3d ed.], 888, 889.) If a filed property map shows the street to the width proposed in the widening, and conveyances are made therefrom, the grantee has easements of light, air and access over the entire width of the street to the next intersecting street on each side of the lot purchased. (*Matter of City of New York [Sedgwick Ave.]*, 213 N. Y. 438; *Matter of City of New York [Ave. D]*, 200 N. Y. 536.)

CARDOZO, Ch. J. The proceeding is one for the opening and extending of Northern boulevard as laid out on the final map of the borough of Queens, city of New York.

The resolution authorizing the acquisition of title for the purpose of the boulevard was adopted by the Board of Estimate and Apportionment June 16, 1922. A petition for an order to ascertain and determine the compensation to be made to property owners was submitted to the Supreme Court in April, 1923. The trial

of the proceeding was begun before a justice of the Supreme Court in December, 1926. A tentative decree determining the damages was filed in May, 1928, and a final decree in January, 1929. Title to the damage parcels became vested in the city June 1, 1927.

Northern boulevard as opened in this proceeding is an enlargement of a highway known as Old Broadway which was fifty feet wide. The damage parcel map shows that the street formerly existing was to be widened fifty feet by taking that space away from the abutting lots. The result was to be a boulevard 100 feet in width. The city does not deny that compensation would have been payable for the full value of the new width if title thereto had been acquired when the proceeding was begun. Its chief objection to the award grows out of the filing of private maps and the delivery of conveyances during the pendency of the proceeding whereby the compensation payable at the beginning is said to have been changed. The argument is that by force of these instruments, the land appropriated by the city became incumbered with private easements and that owing to the easements thus created the value was so reduced as to be rendered almost nominal.

The damage parcels in controversy divide themselves into two classes: those covered by private maps upon which the lines of Northern boulevard are provisional and tentative, or may fairly be so considered in the light of the then existing circumstances, and those where the lines of Northern boulevard are unqualified and final.

The O'Donnell map, filed in March, 1924, the Dooley-Stapleton map, filed in 1925, the Firma Realty map, filed in 1925, and the Andrew Benson map, filed in 1923, fall within the one class. The Broadburne map, filed in 1924, and the Lewis & Thompson map, filed in 1926, fall within the other.

The situation in respect of each class will be considered separately.

(1) For purposes of illustration, we begin with the O'Donnell map and the group of damage parcels covered thereby.

In March, 1924, while this proceeding was under way, William D. O'Donnell laid out his land upon a map, and subdivided it into lots. On this map he marked the lines of Northern boulevard according to its new dimensions and also the earlier lines which were those of Old Broadway. From time to time thereafter he made sales of the land so mapped and subdivided, identifying the lots by their numbers on the map. If the lateral lines were to be projected to the line of Old Broadway, the depth of each lot would be approximately 150 feet. If the lateral lines ended with the boulevard, the depth was 100 feet only. The intervening space had none of the physical aspects of a street when the lots were put up for sale and conveyances were made. It was covered with trees and boulders. The seller was well aware, and so too were the buyers, that proceedings to open it as a street had been begun by the city, and were going forward in due course. No one, however, is likely to have had any notion that if the city changed its mind and decided to confine Old Broadway to the original dimensions, there would still be a private street for these particular blocks wider than the public highway through the rest of its extension. Sparse the descriptions doubtless are and to some extent ambiguous. Even so, the city does not deny that they were adequate to pass to the grantees of the abutting lots the naked fee, if nothing more, of the space of land intervening between the old lines and the new. All that the city claims is this, that the grantees, in taking title to the fee, took it charged with private easements for the benefit of other buyers, the owners of the other lots laid down upon the map. The existence of these easements, it is argued, reduced to such an extent the value of the fee that as matter of law the awards must be held to be excessive, since the evidence

makes it clear that they could have been little, if any, higher if the fee were unincumbered (*Matter of City of New York* [*Sedgwick Ave.*], 213 N. Y. 438).

The question is whether the buyers of these lots, taking title during the pendency of the proceeding to open the boulevard as a public highway, may reasonably be assumed to have covenanted that if the proceeding was not continued, they would keep the boulevard open as a private street to the extent of its entire width, the consequence of such a covenant being to destroy their claims to compensation for the appropriation of the fee.

We have no thought to impair the authority of the principle repeatedly declared that the owner of a tract who lays out streets upon a map and sells the subdivided lots with reference thereto, may be found by implication to have created private easements in favor of the lot owners upon the streets thus declared to be created for their use (*Matter of City of New York* [*Sedgwick Ave.*], 213 N. Y. 438; *Lord* v. *Atkins*, 138 N. Y. 184, 190; *Taylor* v. *Hopper*, 62 N. Y. 649). Even so, the question is one of intention, to be answered, like questions of intention generally, in the light of all the circumstances (*Matter of Brook Ave.*, 40 App. Div. 519, 522; affd. on opinion below, 161 N. Y. 622; *Schonleben* v. *Swain*, 130 App. Div. 521, 527; 198 N. Y. 621; *Matter of City of New York* [*Van Alst Ave.*], 143 App. Div. 564, 568; *Matter of City of New York* [*West 177th St.*], 135 App. Div. 520, 524; *Matter of City of New York* [*Austin Place*], 125 App. Div. 821; *Smith* v. *Smith*, 120 App. Div. 278, 284; *Matter of 116th St.*, 1 App. Div. 436, 439; *United States* v. *Sumner*, 1 Sumn. 500; *Underwood* v. *Stuyvesant*, 19 Johns. 181; *Matter of Mercer St.*, 4 Cow. 542; *Neely* v. *Philadelphia*, 212 Penn. St. 551, 557). " Whether a grant of an easement arises from implication in a grant of real estate, depends upon the intent of the parties to the grant; and in construing the grant the court will take into consideration the circumstances attending the transaction, the particular situa-

tion of the parties, the state of the country and the state of the thing granted, for the purpose of ascertaining the intention of the parties " (*Matter of Brook Ave.*, *supra*). A reference to a street or avenue may in one set of circumstances amount to the creation of an easement, and in another may have no other object than description or location.

When the map of the O'Donnell tract is viewed in the setting of the occasion, the lines of Northern boulevard and Old Broadway will be seen to have been set down thereon for description and location and not for the purpose of establishing a private street. There was no sense in indicating the dimensions of Old Broadway as well as those of Northern boulevard, if the purpose was to indicate a covenant that apart from the outcome of the proceeding then pending, the boulevard would be kept open in any event to the extent of its projected width. The meaning was merely this: that the lines of the public street and the boundaries of the lots will be the lines of the new boulevard, if the widening proceeding goes to a decree, and if it does not go to a decree, that the lots will extend to the line of Old Broadway, the highway already in existence through dedication and acceptance ( *Underwood* v. *Stuyvesant*, *supra*). Any other interpretation would lead to consequences too harsh to be accepted by a court except under the pressure of manifest compulsion. At the beginning of the proceeding the owners of the land intervening between the old and the new highway had a valid claim against the city for the full value of the land condemned, or would have such a claim as soon as title passed. If the filing of the maps while the proceedings were under way has had the effect of converting this land into the bed of a private street, the owners have made a gift to the city of nearly the whole value of a third of what they owned. They have reduced by a third the depth of all the lots and have done this without the possibility of requital to themselves

or their grantees. They cannot gather in the value to their own use, for, by hypothesis, any fee they might have retained after the conveyance of the abutting lots would have been the naked fee only, a thing that would be worth a dollar and no more. They cannot pass over to the buyers of the lots the right to an award of the unincumbered fee, for by hypothesis they were placing incumbrances on the fee and destroying most of its value in the very act of sale. Possible, of course, it is that owners would do these very things. The result might have come to pass through mistake or inadvertence. None the less, the maps and the conveyances may not fairly be read as effecting that result if there is room for another construction more consonant with reason. The city had begun a proceeding to condemn the land and pay for it. Only under the pressure of manifest compulsion will a court impute to the owners a purpose to give the land away.

The reasons are not obscure why the private maps in question, filed as they were during the pendency of the proceeding, should have taken such a form. Section 334 of the Real Property Law (Cons. Laws, ch. 50), in force at that time, forbade the sale of lots by reference to a map, unless the maps were filed. Section 1540 of the charter of the city (Laws of 1901, ch. 466, as amd. by Laws of 1916, ch. 513) forbade the filing of a map without the consent and approval of the municipal authorities. The effect of these statutes was considered by this court in *Matter of City of New York (East 177th Street)* (239 N. Y. 119). If the streets and avenues on the maps prepared by the landowners did not correspond with those on the final map of the city, the consent and approval of the municipal authorities would probably be withheld. The landowners knew that proceedings to open the new avenue were pending, and that there was only a most remote possibility that they would be discontinued or abandoned. So the map was made to show the lines of the new street

or avenue and those of the old one also. If the new street was opened, the boundaries of the lots would be limited thereby, though compensation for the space appropriated would be due to the abutting owners. If the new street was abandoned, the lots would be bounded by the old one. To say that there was a purpose, irrespective of the action of the city, to widen Old Broadway by creating a private street or road beside it and parallel thereto, is to fly in the face of common sense and reason. Municipal authorities are not at liberty to be generous, but they are under a duty to be just.

We think our present ruling is not at variance with what was decided in *Matter of City of New York (Sedgwick Avenue)* (162 App. Div. 236; 213 N. Y. 438), pressed upon us by the appellant as a controlling precedent. There, as here, the private map was filed during the pendency of the proceeding. It differed, however, in its form from the maps in this proceeding which we have grouped together as those of the first class. The difference is this, that in the map considered in the earlier case, the new avenue was described according to its new dimensions without anything to warn a buyer that they were provisional or tentative. In this situation there was nothing to do except to confirm the implication of private easements in favor of the lot owners, since there was nothing in the conveyances or in any circumstances exhibited by the record to give notice or even suggestion that less was meant to pass. The ruling there made is not to be extended to a case where on the face of the map, as well as in the circumstances, the signs and tokens are many that the lines of the street are those of a municipal project and not of private covenant.

What we have said will apply with unimportant variations to all the maps we have classified as provisional or tentative. Our conclusion as to all is fortified in the case of the O'Donnell and Firma maps by special considerations not applicable to the others. Some of the

owners who had bought from the maps exchanged releases with one another, extinguishing any easements that might otherwise have existed. These releases were executed in March, 1927, after the trial had been begun, but before title had vested in the city and before the tentative decree. They were not made in bad faith with a purpose to enhance the compensation payable by the city beyond reason and justice (*Matter of City of New York* [*Briggs Ave.*], 196 N. Y. 255). They were made in a legitimate effort to forestall a technical construction of the deeds whereby the constitutional pledge of just compensation was in danger of being frittered away. Dominion over the land, exerted for such a purpose, continued to be legitimate until condemnation was complete.

(2) We pass to the consideration of the second group of damage parcels, those covered by the Broadburne and the Lewis & Thompson maps.

No substantial distinction can be perceived between the case for these lots and the case for the lots in the opening of Bailey avenue (*Matter of City of New York* [*Sedgwick Ave.*], supra).

When we examine the Broadburne map, we find nothing to suggest that the lines of Northern boulevard as there laid down are provisional or tentative. In the conveyances made with reference to that map, the point of beginning is stated to be at the southerly side of Northern boulevard, which is thus recognized as an existing street. Nowhere is there notice to a purchaser that the existence of the boulevard for the width of 100 feet is dependent upon any future action of the municipal authorities. Indeed, the conveyances include the right, title and interest of the grantor in the boulevard to the center thereof, which again is a representation that the street has been definitively laid out and is more than a mere project.

In the Lewis & Thompson map there is the same

appearance of finality. The conveyances with reference thereto identify the lots by numbers as laid out upon the map, and have, therefore, whatever finality belongs to the map itself.

We conclude that under the authority of *Matter of City of New York (Sedgwick Avenue) (supra)*, the awards to be made to owners of these lots must be less than the value of an unincumbered fee.

There is a distinction, sometimes overlooked, between the ownership of the fee of a street subject to the usual easements when the owner of the fee so burdened is also the owner of the abutting lots, and the ownership of such a fee by one who has no title to the lots. In the first case, the loss sustained by the appropriation of the fee, even though the fee be subject to the easements, is something more than nominal. An abutting owner is benefited by retaining for himself the fee of a contiguous street, for in so doing he retains control over subsurface uses to which the street might otherwise be put (*City of Buffalo* v. *Pratt*, 131 N. Y. 293; *Matter of City of New York* [*Sedgwick Ave.*], *supra*, p. 446), and at times other advantages not easy to catalogue. In the second case, the ownership of the incumbered land is so nearly profitless and barren that an award would be wholly speculative if made for more than nominal damages (*Matter of City of New York* [*Decatur St.*], 196 N. Y. 286; *Matter of Schneider*, 136 App. Div. 444; 199 N. Y. 581). The damage parcels taken in this proceeding belonged to owners whose lots abutted on the newly opened street. Even so, the awards are so nearly equal to the value of an unincumbered fee that they ought not to be upheld if the land at the time of the taking for the purpose of a public street was subject to private easements impairing the value greatly, though not destroying it altogether.

Thus, taking up the damage parcels covered by the Broadburne map, we find that the award for parcel No. 199B was $17,608 as compared with $19,668.80,

the highest value given by a witness for the claimant; for 199D $8,972 as compared with $8,866.72; for 199J $4,236.50 as compared with $4,660; and for 199M $4,329.50 as compared with $4,762.45. The awards for the other damage parcels on this map were made to unknown owners without the testimony of experts, but were plainly on a similar scale.

Turning to the Lewis & Thompson map, we find the award for damage parcel No. 340 to be $1,389.10 as compared with the claimant's valuation of $2,416.92. The awards for the other parcels on that map were made to unknown owners.

We think some deduction, and that not merely a trifling one, should have been made from the value of an unincumbered fee because of the outstanding easements. The testimony of the expert witness for the claimants shows that he made no such allowance in appraising the appropriated parcels, but considered them as if they were to be valued by themselves without reference to their relation to other portions of the lots. In most instances his testimony was accepted with only trifling changes as the basis of the awards. Indeed, there is no other testimony in the record that the court was able to follow, unless it agreed with the witness for the city that the value was almost nominal. There is need of a new appraisal which will give heed to the incumbrances imposed by the private easement without depreciating their effect, and also without exaggerating it.

We speak of exaggeration of the incumbrance as well as depreciation, for we are not to be understood as holding that in the peculiar circumstances here present, the subsurface uses of the bed of the street are the only ones to be considered in determining the loss. The situation would be different if the intervening strip of land had been physically opened as a street, graded as such, and not susceptible of occupation in any other way. In point of fact, it was not opened, or so we infer from the

record, though the physical conditions should be more clearly brought out when the case is tried again. If this be so, there were many uses to which the land might have been applied with interference only a remote contingency, if the city had determined, before the appropriation was complete, to abandon the projected street. A lot owner buying from such a map does not covenant by implication that he will do anything affirmative (*Greenfarb* v. *R. S. K. Realty Corp.*, 256 N. Y. 130, 134). He does not bind himself to open a road, still less to grade or maintain one (*Cole* v. *Hadley*, 162 Mass. 579). His duty is fulfilled if he does nothing to obstruct the right of access belonging to his neighbors. The physical opening of a private street fifty feet wide would be a very costly enterprise. If the city abandoned the projected public street, the chances are small that the lot owners would have been willing to clear the way themselves. They would have been satisfied with the existing highway along the lines of Old Broadway. In such circumstances the owner of the fee of the intervening strip, while he would hardly have ventured to improve it with a building, would in all likelihood be free for many years to use it without interference as a garden or a courtyard, improving thereby the appearance or the comfort of buildings at the rear. This is what the Appellate Division must have meant when it spoke of the private easements as not " of sufficient dominance " to work serious impairment of the value of the land affected (232 App. Div. 830, 831). There was indeed a possibility that adjoining owners might insist upon keeping the strip open and grading it as a private way. The contingency was remote and doubtful. Undoubtedly the mere possibility would be a cloud upon the title, seriously affecting the value of the fee, and yet, in view of the doubt and the remoteness, not affecting it as destructively as if the way were open and in use. The effect of these contingencies in their bearing upon the

value of the other portions of the lots is to be measured and determined by the trier of the facts.

This court is not at liberty to reverse awards in these proceedings on the ground that they are excessive unless the excess is so great as to indicate that they have been made on an erroneous principle. Such error, we think, appears upon this record in respect of the damage parcels that are subject to a right of way.

An appeal has been taken in behalf of Christian Reis, the claimant to an award for the appropriation of damage parcel 199L. The Appellate Division modified the decree as to that parcel by reducing the award to six cents, it appearing that by the deed which was the claimant's source of title, the grantee was under a duty to convey the damage parcel to the city without compensation if required for the boulevard. The appeal as to this parcel should be dismissed, without costs, it appearing that there has been a failure to file the statutory undertaking.

Upon the appeal by the city of New York, the order of the Appellate Division and that of the Special Term should be modified by reversing the awards as to damage parcels 199, 199B, 199D, 199E, 199F, 199G, 199H, 199J, 199K, 199M, 340, 340A, 340B, 340D, 340E, 340F, 340G, 340J, 340K, 340M and 340N, and granting a new trial, with costs to abide the event, and as so modified should be affirmed, with costs to the respondents prevailing in this court. (See 258 N. Y. 610.)

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.