JAMES E. MILLER et al., Plaintiffs, *v.* EDMORE HOMES CORP. et al., Defendants.

Supreme Court, Special Term, Queens County, July 12, 1954.

*Michael Goldberg* and *Abraham Apat* for Edmore Homes Corp., defendant.

*Abraham Apat* for Ridgewood Savings Bank, defendant.

*Edward G. Wolff* for plaintiffs.

CONROY, J. The plaintiffs, thirteen in number, commenced this action to require the defendant Edmore Homes Corp. to remove a retaining wall which interferes with their use of a portion of the defendant Edmore's property, over which the plaintiffs claim to have an easement.

The property owned by the plaintiffs begins at a point on the westerly side of 145th Street 40.78 feet south of 111th Avenue; running southerly along the westerly side of 145th Street 260 feet; thence westerly 100 feet to the center line of the block between 144th Street and 145th Street; thence northerly along the center line of the block 260 feet; thence easterly

100 feet to the westerly side of 145th Street to the point of beginning. On this plot there are erected thirteen attached brick dwellings.

The defendants are the owners of a plot adjoining plaintiffs' property to the west and running from 111th Avenue southerly 300 feet more or less and fronting on 144th Street, said plot being 100 feet in depth. The property of the plaintiffs and that of defendant Edmore adjoin at the rear line midway between 144th Street and 145th Street.

In 1931, the T. H. Fraser Mortgage Corp. acquired title to the property owned by the plaintiffs and the defendant Edmore. In the same year Fraser conveyed the parcel now owned by the plaintiffs to the S. G. W. Construction Corp., which company built on that property fourteen attached brick one-family houses fronting the west side of 145th Street. The owner of the fourteenth house, which is at the southwest corner of 111th Avenue and 145th Street, is not a plaintiff in this action. The plaintiffs are the owners of the remaining thirteen houses.

At the time the houses were built, garages were also erected facing the rear lot line located about ten and one-half to twelve feet east of said line. The rear ten feet of the property owned by the plaintiffs was subject to an easement of record, ten feet in width, and was used in conjunction with a portion of the defendant Edmore's property as a driveway for ingress to and egress from the garages to 111th and 114th Avenues.

After the fourteen houses were built, S. G. W. Construction Corp. conveyed them to various individual owners. Between the years 1931 and 1936, S. G. W. Construction Corp. and the individual owners who had purchased from it lost title to the property, either by foreclosure or by deed in lieu of foreclosure, and the Fraser Mortgage Corp. reacquired title to all fourteen houses. Between 1936, when Fraser had reacquired the last of the fourteen houses, and 1941, Fraser rented the fourteen houses and the garages to various tenants. From 1941 to 1946, Fraser sold the thirteen houses now owned by the plaintiffs, either to the plaintiffs or their predecessors in title. During the years, from 1931, until the sale by Fraser, the plaintiffs or their predecessors in title, drove over and used the most easterly eight feet of defendant's property, running from 111th Avenue to 114th Avenue, as did sanitation trucks and commercial vehicles having business with the plaintiffs or their predecessors in title. During these years this use was open and notorious and the roadway resulting from this use was apparent.

The ten-foot easement (of record) at the rear of the plaintiffs' property, although sufficient for cars to traverse, was not sufficient to permit them to make the necessary turn into or out of the garages. The plaintiffs or their predecessors in title, therefore, necessarily used the property adjoining on the west which was still owned by Fraser and which was vacant at that time to get in and out of their garages.

In 1951, Fraser conveyed the parcel fronting on 144th Street and running one hundred feet to the center line of the block between 144th and 145th Streets to one Kate Musof who, in the same year, conveyed it to the defendant Edmore. Thereafter said defendant built eight one-family detached frame houses on that parcel. On or about March 26, 1953, Edmore erected a retaining wall at the rear line of said parcel (the dividing line between the plaintiffs' and the defendant's property), thereby preventing the plaintiffs from using their respective garages because of the impossibility of turning a car in the ten or twelve feet between the wall and the garages in order to get into or out of the garages.

When plaintiffs saw the retaining wall being built, they immediately retained counsel and commenced this action within a week thereafter.

An easement may be created by implied grant. The rule is clearly stated by Thompson in his work on Real Property (perm. ed., Vol. 1, § 390, p. 630) as follows: "An easement may be created by implication as well as by express grant. However, to create an easement in this manner over the property of another, there must have been a separation of title, and a use before separation took place which continued so long and was so obvious or manifest as to show that it was meant to be permanent, and it must appear that the easement is necessary to the beneficial enjoyment of the land granted or retained. In the absence of an express grant, the implied intention to create an easement is gathered from the circumstances surrounding the conveyance." (See, also, *Sullivan* v. *Munger*, 281 App. Div. 791.) Implied easements are based on the intention of the parties to the grant. In *Matter of City of N. Y.* [*Northern Blvd.*], (258 N. Y. 136, 147–148), the Court of Appeals quoted with approval from *Matter of Brook Ave.* (40 App. Div. 519, 522), as follows: "'Whether a grant of an easement arises from implication in a grant of real estate, depends upon the intent of the parties to the grant; and in construing the grant the court will take into consideration the circumstances attending the transaction, the particular situation of the parties, the

state of the country and the state of the thing granted, for the purpose of ascertaining the intention of the parties ' ''. Again Thompson says (§ 390, p. 632) : '' When one contracts for the purchase of a portion of an estate to which an open and visible easement upon the grantor's remaining estate is apparently appurtenant, he is presumed to have contracted with reference to the visible physical condition of the property at the time.''

In the instant case, after Fraser had reacquired, in 1936, all of the fourteen houses built by S. G. W., it rented them out until 1941. From 1941 to 1946, Fraser sold the houses to the plaintiffs or their predecessors in title. At that time the driveway over defendant's property and the garages in the rear were in open visible use, and an inspection of the property would have disclosed the use of approximately eight feet of Fraser's other parcel in connection with the use of the garages. The use of approximately ten feet of Fraser's remaining parcel was necessary to the beneficial enjoyment of the garages which were part of the thing granted and meant to be permanent.

In *Paine* v. *Chandler* (134 N. Y. 385, 387), it was stated to be the rule that '' when the owner of land sells a part thereof he impliedly grants to the grantee all those apparent and visible easements which are necessary for the reasonable use of the property granted and which are at the time of the grant used by the owner of the entirety for the benefit of the part granted.'' In the same case the Court of Appeals pointed out the distinction between implied grants and implied reservations at page 388 as follows: '' In this state the rule of strict necessity is applied to implied reservations but not to implied grants.'' With respect to implied grants the court further stated (p. 389) : '' Undoubtedly an easement to pass by implication must be necessary to the enjoyment of the estate granted, but the necessity required is a reasonable not an absolute one.''

The physical facts in this case are such that it could probably be said that plaintiffs' necessity is an absolute one. Certain it is that it is reasonable necessity, for without an easement over eight feet of defendant's land the garages which were conveyed by Fraser to the plaintiffs, as part of their grants, are absolutely useless at the present time.

The plaintiffs filed a *lis pendens* herein, but upon the application of Edmore, pursuant to section 124 of the Civil Practice Act, the *lis pendens* was cancelled upon Edmore's filing of a bond or deposit in cash in the sum of $5,000. Section 124 of the Civil Practice Act permits cancellation of a *lis pendens when it appears to the court that adequate relief can be secured to the*

*party filing the lis pendens by a deposit of money or by the giving of an undertaking.* No appeal was taken from the order of cancellation, and the time to take such appeal has expired. Since the *lis pendens* was cancelled, the court is unable to grant the plaintiffs the relief to which they would be entitled but for this procedural situation.

Under the circumstances this court can grant only a judgment for the damages sustained. I find that damage to be the difference in market value of each of the thirteen houses with access to the garages and without such access to be the sum of $750. The court, therefore, grants judgment in favor of the plaintiffs in the sum of $9,750, with costs and disbursements. The excess over the $5,000 bond or cash deposit shall be a personal judgment against the defendant Edmore Homes Corp. At the trial the complaint was dismissed as against the defendant Ridgewood Savings Bank. If the parties hereto desire to submit findings of facts and conclusions of law, they may do so within five days after this memorandum appears in the New York Law Journal, otherwise this memorandum shall constitute the decision of the court. All motions made by the defendant Edmore, upon which decision was reserved, are denied.

Settle judgment on notice.