JAY ROSE, Respondent, v. INDIAN PARK ASSOCIATION, INC., Appellant.

Second Department, March 11, 1957.

*Charles Lichtenstein* and *Sidney I. Laitman* for appellant.

*Jacob M. Kornfeld* for respondent.

WENZEL, Acting P. J. This action was brought pursuant to article 15 of the Real Property Law to determine conflicting claims of the parties with respect to a small gore of land which abuts respondent's plat in a development at Greenwood Lake in the town of Warwick, Orange County. The fee of the disputed gore is owned by appellant and the dispute is whether respondent has an easement to use that land. Respondent's claim is based on the deeds in his chain of title, beginning with the deeds from the developers to the first owners of his lots, all of which deeds described his lots by reference to development maps, and on a certain written declaration of easement which was executed by one of the developers.

Three separate development maps of the section of the development in which respondent's three lots are located were made, each at a different time. The original grantees of the three lots acquired two of the lots by two deeds dated August 22, 1929, and the third by deed dated May 15, 1931. One of the 1929

deeds was by Amsterdam Development and Sales Company, hereinafter referred to as Amsterdam, the owner of the entire tract, and the other by Malverne Building Company, Inc., hereinafter referred to as Malverne, the predecessor of Amsterdam as owner. Each of these 1929 deeds conveyed to the grantees lots 1 and 2 as shown on a map entitled "Map of Greenwood Lake Terrace Section 1" made May 15, 1929.

This map delineated a road running generally north and south, which has been indentified as "Brook Mountain Trail", with its southerly terminus at a State highway running northeasterly and southwesterly, and another road, designated as "Lake Trail", running generally northeasterly from a point on the easterly side of Brook Mountain Trail, closely parallel to the said State highway, which point was shown to be some 150 feet north of the highway. Lot 1 was shown to run from the southerly side of Lake Trail to the northerly side of the highway, with its westerly boundary line also constituting the easterly side of Brook Mountain Trail for about 100 feet immediately south of Lake Trail. From the latter point on the westerly boundary of lot 1, that is, about 100 feet south of Lake Trail, the line showing that boundary does not continue in its generally southerly direction, but runs southeasterly 54 feet to the highway. No other line appeared on the map to mark out any different boundary for the easterly side of Brook Mountain Trail opposite this southerly part of the westerly side of lot 1. Lot 2 was shown to be contiguous to the easterly boundary of lot 1. Lot 3, which was not included in these two 1929 deeds, was also shown on this map as being contiguous to the easterly line of lot 2, and both lots 2 and 3 were shown to extend, as does lot 1, from Lake Trail to the State highway.

The disputed gore may be described as bounded on one side by the said line of the most southerly 54 feet of the westerly side of lot 1; on a second side, by a line projected southerly from the said point on the westerly side of lot 1, 54 feet north of the State highway, and running to the highway, and on the third side by the northwesterly line of the highway.

The 1931 deed was by Malverne, Amsterdam having in the meantime reconveyed to Malverne the entire tract less what had been sold to others. This deed, conveying lot 3 to the same original grantees of lots 1 and 2, did not refer to the above-mentioned map but to a map which had been made in 1930 and which was entitled "Revised Map of Greenwood Lake Terrace Sec. 1".

The third map was dated October 21, 1929, later than the time of the execution of the said deeds to lots 1 and 2. It of

course was not mentioned in those deeds, and also was not mentioned in the 1931 deed. All the mesne deeds by which title was conveyed to respondent described lots 1 and 2 by reference to the May, 1929 map and lot 3 by reference to the 1930 map.

There are no differences amongst the three maps so far as layout of the lots and roads is concerned, except as to remote parts, and except that, whereas the two 1929 maps set out dimensions for lots 1 and 2, the 1930 map omits dimensions for those lots and some others, and the 1930 map also omits a dividing line between lots 1 and 2 and has the word " Out " in the space representing those lots instead of their lot numbers. In addition, the 1930 map contains a statement to the effect that it supersedes the October, 1929 map.

In 1943 Malverne, still the owner of the roads in the development, executed and caused to be recorded a declaration which stated that it grants an easement for ingress and egress " over all the strips of land lying in the bed of any street, road, avenue, trail or highway, opened or proposed, as shown on " the 1930 map and certain other maps not here pertinent, to " all persons and corporations who are now or may hereafter become the owners, mortgagees, or lienors of portions of the premises heretofore owned or now owned by " Malverne " as shown and designated on " the said maps. The document further states that it is understood that the easements " shall pass to any and every owner of premises abutting on said respective rights of way or any continuations of the same " and that the " said respective rights of way are created for the benefit of such abutting owners ", but that " nothing herein contained   *   *   * shall be considered to be a declaration of said rights of way or any of them to the use of any other person, or to the public, generally."

Thereafter, Malverne executed two deeds to appellant conveying land in the roads in this development, one in 1948 and the other in 1953. The 1948 deed conveyed land in the bed of Brook Mountain Trail, describing it as abutting on certain lots as shown on the 1930 map. Those lots are opposite lot 1. The 1953 deed conveyed the land in " all streets, roads, avenues, trails or highways opened or proposed as shown on " certain listed maps, " Subject to covenants, agreements, easements and restrictions in prior instruments of record ". The listed maps are the same as those which were set forth in the 1943 declaration of easement.

Brook Mountain Trail is the main entrance road to the development. It is paved to a width of about 24 feet, except that from a point just north of the State highway the pavement

widens gradually at its easterly side and extends over the gore so as to make a curved turn into the highway. The remainder of the gore is rough, rocky and wooded ground, similar to respondent's land. On the rough part of the gore, near this paved curve, is a stone pier, and there is a like pier on the westerly side of Brook Mountain Trail near the highway, an effect of the two piers being to mark out the entranceway to the development.

The easement in streets or roads for the purpose of access which may be acquired by a purchaser of a plat of land from a developer by reason of the fact that the deed to the purchaser described the plat by referring to it as designated on a stated map and the further fact that the map shows the plat as it appears with reference to streets and roads laid out on the map (*Lord* v. *Atkins*, 138 N. Y. 184, 191) "may be found by implication", the question being "one of intention, to be answered, like questions of intention generally, in the light of all the circumstances" (*Matter of City of New York* [*Northern Blvd.*], 258 N. Y. 136, 147). What appears on the map "is an important circumstance" even though not the sole circumstance (*Erit Realty Corp.* v. *Sea Gate Assn.*, 259 N. Y. 466, 470).

The line which represents the westerly boundary of lot 1 on the May, 1929 map is, as we have seen, also the westerly boundary of the block in which respondent's parcel lies. There is no other line or mark indicating to the contrary as to the full extent of this boundary. Thus, it appears to be clear that the intention was to convey to the original grantees of lots 1 and 2 in 1929 a parcel which would be the end parcel of the block, with no intervening parcel between lots 1 and 2 and the end of the block at any place along the westerly boundary of the block.

Further, were it not for the change in direction of the line of the westerly side of lot 1 and the block, that is, if the line continued in its general southerly direction all the way to the State highway, an acute angle would be formed at the junction of Brook Mountain Trail and the State highway. For obvious reasons avoidance of such an angle would be highly desirable. The conclusion is compelled that the change of direction in the line was intended particularly in order to avoid such acute angle at the intersection, and the actual widened paving cutting across the gore confirms that that was the intention.

In our opinion, the important circumstances indicated on the map, showing respondent's parcel as the end parcel of the block and the avoidance of the acute angle, and the additional confirming fact that the paving was extended over the gore,

join to support the determination made by the trial court that the 1929 deeds to respondent's predecessors in title included a grant of an easement in the use of the gore as part of Brook Mountain Trail. If further fortification for our conclusion be necessary, it may be found in the rule that, if there be doubt as to the import of the terms of a grant of an easement, it should be resolved in favor of the grantee (*Missionary Soc.* v. *Evrotas,* 256 N. Y. 86, 89).

We are also of the opinion that Malverne's reference to the 1930 map in its declaration in 1943, without in any way attempting to withdraw the gore as part of Brook Mountain Trail, gave confirmation that the intention in 1929 had been to include the gore as part of that road.

Respondent's observation, that if the gore is not a part of Brook Mountain Trail appellant has no title to the gore and therefore no basis for defense, is also sound. Further, in view of appellant's claim of title to the gore, appellant may well be deemed estopped from contending that the gore is not part of the road.

Although *Dalton* v. *Levy* (258 N. Y. 161), *Williams* v. *Boston Water Power Co.* (134 Mass. 406) and *Reis* v. *City of New York* (188 N. Y. 58) likewise involved easement claims based on conveyances of plats by reference to maps in which the disputed areas were shown as open spaces, they do not require a contrary determination. None of them presented a situation of an end parcel on a block with a dispute as to rights only in the land alongside the parcel at that end, and as a matter of fact the court in the *Dalton* case did not hold that the claimant had no easement at all, but held only that it would not interfere with the defendant's private use of merely a portion of the disputed area, which formed no part of the continuous path of the regular street lines.

Turning to the matter of Malverne's declaration in 1943, that served not only to confirm that the gore was considered part of Brook Mountain Trail but also to vest the extant owners of respondent's plat with an easement in all the roads shown in the 1930 map, which would include this road, or at least to confirm the 1929 vesting of such easement in them. The word " Out ", which appeared in the space of lots 1 and 2 in that map does not require a finding that the owners of those lots were excluded so far as the declaration was concerned. It is probable that the use of the word " Out " had relationship only to the fact that as of the time of the making of that map Malverne did not own those lots. The fact is that the declaration expressly granted the easement to all owners of premises shown

280

on that map, to owners of premises shown thereon which premises had previously been owned by Malverne. The owners of respondent's lots were within that description. Had Malverne intended otherwise, it could easily have made such intention clear. In any event, respondent's lot 3 was not marked " Out " (Malverne owned lot 3 at the time of the making of the 1930 map), so that, even under appellant's view, the 1943 declaration included respondent's predecessors as grantees of the easement as owners of that lot.

The judgment should be affirmed, with costs.

Present — WENZEL, Acting P. J., MURPHY, UGHETTA, HALLINAN and KLEINFELD, JJ.

Judgment unanimously affirmed, with costs.