Matthew M. Levy, J.
This is an action to enjoin the defendant from using the plaintiffs ’ land and to compel the defendant to remove certain encroachments built thereon. The trial proceeded upon an agreed statement of facts, the submission of exhibits, an inspection of the premises involved, and the proffer of certain testimony. The crucial facts follow:
In 1869, Charles Darke, the owner of a large tract of land in what was then the Town of Yonkers, in Westchester County of New York State, decided to subdivide his property, and a map showing the land as subdivided was filed in the Register’s office of Westchester County in that same year. The map shows the property as subdivided into numbered lots, together with perpendicular and horizontal areas running north to south and east to west. These latter areas were not numbered on the map, but were described as ‘ ‘ lanes ’ ’, and the property in question in this suit is a segment of a lane in the most northerly section of the tract, sometimes referred to herein as Lot 166. The plaintiffs claim ownership in fee of this lot, which borders upon the defendant’s and the plaintiffs’ properties.
In 1923 the defendant and her husband took title to Lot 115, as numbered on the Darke map. The description of the property in the deed was by reference to that map and as being bounded on its northerly side by a “ lane ”. That lane is part of Lot 166. The conveyance further recited that it was made ‘ ‘ Together with the appurtenances and all the estate and rights of the parties of the first part in and to said premises.” The defendant later constructed a building on this land for a residence. In August, 1927 the defendant and her husband conveyed the fee thereof to the defendant. In 1955 the defendant acquired an additional piece of property, Lot 116 as numbered on the Darke map. This parcel was also bounded on its northerly side by the southerly side of the same lane that bounded Lot 115. The conveyance of Lot 116 grew out of a tax foreclosure proceeding and was by Referee’s deed. This deed, dated April 18, 1955, also described the grant by reference to the Darke map, but excepts a portion of land taken by the City of New York for the widening of Heath Avenue, a public highway, which was opened in 1912.
The bulk of the plaintiffs’ property lies generally north of the defendant’s land. That portion of the plaintiffs’ property which is the subject of the present controversy is known on the New York City tax maps as Lot 166, and is what has hereto *359 fore been referred to as the “ lane ” bounding the defendant’s property on the north. The plaintiff Harry J. Gerbig acquired title to Lot 166 from the city by deed dated December 28, 1955, and thereafter he conveyed title to himself and his wife, the other plaintiff. The city had previously acquired the fee, by deed dated December 3, 1953, as a result of an in rem tax foreclosure proceeding. The defendant never paid any taxes on the lane. The lane was never officially dedicated by the municipality as a street in use, nor were there ever any repairs or paving done on or maintenance undertaken of the lane.
As the matter stands, both in 1912 (when the City of New York opened Heath Avenue as a public highway) and today, the plaintiffs and the defendant had and have access to Heath Avenue without using the lane as a means of passage. This fact is apparent from the exhibits submitted, and from a physical inspection of the premises. The lane now forms an open yard between the plaintiffs’ land and the defendant’s land. The defendant limits her claim of property rights in the lane to an easement of access only. She does not claim any other interest in the plaintiffs’ property. The plaintiffs question the existence of any rights of the defendant in or on the lane, which is claimed by the plaintiffs to be their property. They assert encroachment thereon on the defendant’s part consisting of a concrete patio and walk and flower trellises constructed by the defendant on the lane within the last five years. The plaintiffs contend that these encroachments indicate that the defendant intends to appropriate part of the plaintiffs’ land, and that this exclusive appropriation is contrary to the defendant’s claim of easement for purposes of access.
Easements may arise, of course, by grant, by prescription or by necessity. But, for the purpose of a resolution of the issues in this action, I am concerned principally with easements by grant, and, more particularly, by implied grant — for the prescribed period has not run since the defendant first built her encroachments into the lane, it is clear that there is no (and defendant specifically disclaims an) easement by virtue of necessity, and I hold that there is no express grant.
The defendant has offered the testimony of one Grace Cohen, to the effect that, during the years 1946 to approximately 1951, she regularly travelled on the plaintiffs’ property to reach her motor vehicle stored in a garage located on the defendant’s property. This evidence is irrelevant to the issues. The defendant does claim an easement of access, but, as I have said, she disclaims such easement by necessity. The proffered testimony is quite obviously immaterial to show an easement by *360 grant or by prescription (see Civ. Prac. Act, § 35) and in consequence is rejected.
Formerly, it had been thought that a purchaser of realty abutting on a private street took title to the center of the designated appurtenant street (Hennessy v. Murdock, 137 N. Y. 317) and many jurisdictions so held (see cases noted in 3 Powell on Beal Property, § 409, and in 2 Thompson on Beal Property, § 474). It would seem, however, to be the established law today that a purchaser does not take such title (Matter of City of New York [ James A. Woolf], 209 N. Y. 344). Bearing in mind, therefore, that the defendant has no easement by necessity, does the mere fact that the 1923 deed — by which title was originally acquired by the defendant and her husband — contained the language heretofore quoted and here repeated (“ Together with the appurtenances and all the estate and rights of the parties of the first part in and to said premises ”) give the defendant any right to the use of the lane owned by the plaintiffs! The cases are clear that the answer is in the negative. The Court of Appeals, in Root v. Wadhams (107 N. Y. 384) said at page 394: “We think no such right passed by the several conveyances to plaintiff and her grantors, which simply conveyed the land by metes and bounds ‘ with the appurtenances thereunto belonging. ’ Nothing passes by the word appurtenances except such incorporeal easements or rights or privileges as are strictly necessary and essential to the proper enjoyment of the estate granted. A mere convenience is not sufficient to thus create such a right or easement.” (Emphasis mine.) In Van Roo v. Van Roo (268 App. Div. 170, affd. 294 N. Y. 731) the respondent contended that “ appurtenances ” included the use of that portion of the driveway which was on the lands of the appellant; but the court held (p. 174) that “ [ejxcept for necessities, ‘ appurtenances ’ include only that which is contained within the boundaries of the land demised.” That would preclude. a holding that the deed to the defendant gave any express rights to the defendant by way of “ appurtenances ” over the plaintiffs’ property. (See, also, Root v. Conkling, 199 App. Div. 90.) Accordingly, I hold that defendant has no valid claim here to the easement in question by reason — without more — of the use of the word “ appurtenances ” in the deed to her.
The law of this State recognizes the doctrine that an implied grant of easement for purposes of access may, in appropriate circumstances, arise out of the situation where a plot of land is subdivided into lots, private streets, lanes or alleys, and a map showing the land as thus subdivided is recorded. Purchasers from the developer, or from mesne grantors, who take *361 by reference to the filed map of subdivision are considered to have an easement of access into appurtenant streets and lanes as shown on the map of subdivision (Lord v. Atkins, 138 N. Y. 184; Fiebelkorn v. Rogacki, 280 App. Div. 20, affd. 305 N. Y. 725; Weil v. Atlantic Beach Holding Corp., 1 N Y 2d 20; Rose v. Indian Park Assn., 3 A D 2d 274; 3 Powell on Beal Property, § 409). But we are reminded by Chief Judge Cabdozo that this implication is a matter of intention, to be answered, as are questions of intention usually, in the light of all the circumstances: “A reference to a street or avenue may in one set of circumstances amount to the creation of an easement, and in another may have no other object than description or location.” (Matter of City of New York [Northern Blvd.], 258 N. Y. 136,148.) Judge Kellogg described the theory of this implication as necessary where the map shows certain salient features. In Dalton v. Levy (258 N. Y. 161), at pages 165 and 166, he said, for the Court of Appeals: ‘ That the purpose of such a grantor is to convey such an easement is the necessary implication from the symbols appearing upon the map. The parallel lines extending to public streets; the inclosure of spaces appropriate for roads; the abuttal of all the lots upon some such space; the designation of the spaces as ‘streets;’ the inaccessibility of the lots if the inclosures were not streets; the precise boundaries of the area made subject to the easement — these things indicate that the grantor intends the inclosure to be used by lot owners, to its fullest breadth, as a means of passage, for whatever purposes and by whatever means, and that, like a public street, the roads are forever to remain open and free from obstructions.”
It may well be that, in essence, there is a rebuttable presumption of intent. When the original 1869 Darke map of subdivision is examined, it is apparent that the purchaser of an interior lot would have no access to public highways unless the lane appurtenant to his property could be used for access. Moreover, at least in the case of the immediate parties to this action and their predecessors in title, all conveyances were keyed to lot numbers on the Darke map and were made by reference thereto. Thus, both the physical appearance of the original map of subdivision (cf. Erit Realty Corp. v. Sea Gate Assn., 259 N. Y. 466, 470) and the manner of the conveyances involving the properties herein lead me to infer an intention, as a matter of fact, to create, for the benefit of the appurtenant lot-owners, an implied easement of ingress and egress over the lane in question (see, also, Grimes v. Schmidt, 184 Pa. Sup. 159).
*362 I shall next consider the question as to whether the in rem tax foreclosure proceedings, by which the plaintiffs procured title to Lot 166, cut off an implied appurtenant easement burdening the lot sold to the plaintiffs. An interesting case on this issue, arising in another State, is Hayes v. Gibbs (110 Utah 54). The court there said (p. 64): “ It is a known fact that an easement or restrictive building covenant has a definite effect upon the value of the servient estate and thereby changes the value of the dominant estate. Presumably assessors take into account the effect of easements and covenants on value in making their appraisals. * * * The assessor should have considered this building restriction when assessing the defendant’s property and the fact that one assessor testified he acted in ignorance of the existing restrictive covenant thereby failing to correctly assess the servient estate is of no defense to defendant. The law is not founded on mistakes. It must be conclusively presumed in the assessment of the lots that their value was fixed subject to the covenant. If there was no valid assessment there could be no valid sale and defendant would have no title, and a sale would not extinguish anything.” (See, accord, Gowen v. Swain, 90 N. H. 383; Engel v. Catucci, 197 F. 2d 597, 600 [U. S. Ct. App., D. C.].)
The evidence submitted by the parties in the case at bar is inconclusive as to whether any of the lots was assessed for tax purposes at a figure including or not including the value of the easement. The exhibits do not reveal the method of assessment. The defendant’s admission that she had never paid taxes on Lot 166 is not sufficient to establish the method; the concession as made is ambiguous in that regard, and could also be probative as to the defendant’s lack of ownership of the lot.
There is little, if any, definitive case law in this State on, the question as to whether — in the absence of evidence to the contrary— the assessment for tax purposes of a dominant tenement may be presumed, as a matter of law, to include the value of the easement. There does seem to be an indication in the New York cases that it will be conclusively presumed that the dominant estate was assessed in an amount including the value of the easement, and that the assessment of the servient estate was decreased thereby. There appears to be “ a judicial willingness to presume that the easement’s value was included in the assessment of the dominant estate in the absence of evidence to the contrary.” (3 Powell on Beal Property, § 426, pp. 511-512.) Especially is the presumption valid, where the easement is part of the record title, as in the case at bar, regardless of whether or not the easement arises by implied or express grant *363 (see Jackson v. Smith, 153 App. Div. 724, affd. 213 N. Y. 630; Tax Lien Co. of N. Y. v. Schultze, 213 N. Y. 9; Town of Harrison v. Campagna, 193 Misc. 239, affd. 274 App. Div. 898). These eases proceed upon the theory that the sale could not cover other than what was assessed; that the assessment of the burdened land excludes the value of the easement; and, hence, if property rights which were excluded from an assessment were to be sold and extinguished, there would be a taking of property without due process of law (Tax Lien Co. of N. Y. v. Schultze, supra, p. 12); and that, therefore, since the servient tenement is assessed at a figure not including the value of the burdening easement, the tax sale does not cut off the easement over the servient tenement. I so hold here — in the light of the proven facts and applicable law.
However, that does not resolve the issue in this case, for it seems to me that a further question is present — one relating to easements by implied grant, especially those arising from maps of subdivision, as in the case at bar. Are such easements, once found to have existed as a matter of presumed intention, to be forever inviolate and permanently to remain a clog on land titles? I have reached the conclusion that where the reason for the original implication ceases, the easement should, in the absence of other compelling circumstances, itself expire. This is not to confuse, on the one hand, the matter of the creation of an easement by virtue of a necessity therefor, and, on the other, the issue of the expiration of an easement arising by implication when the necessity for its continuance no longer exists. As Professor Powell has written: “ Easements created by necessity have an implied purpose to make possible the utilization of the dominant land, and such easements expire as soon as their necessity disappears. Easements created by other forms of implication, or by prescription, present special problems. As in the case of determining the extent of such easements, it is necessary to resort to the facts of the creating conduct, to see whether one can reasonably infer therefrom a purpose which, simultaneously, accounts for the easement’s existence and curtails its duration. If such a purpose is found, the easement expires on the purpose ceasing to be accomplish-able or being fully accomplished.” (3 Powell on Real Property, § 422, pp. 488-489.)
Undoubtedly, the need for implication of an easement initially arises, at least partially, out of a sense of necessity. That necessity must be reasonably based upon the proper enjoyment of the covered parcel. Lots having no means of ingress or egress to public highways, other than designated lanes or alleys, *364 must have these lanes or alleys available as means of access (cf. Paine v. Chandler, 134 N. Y. 385; Lampman v. Milks, 21 N. Y. 505). And, further, the developer is presumed, as I have heretofore noted, to have intended such result by the physical appearance of the map of subdivision.
In this case, the proof is that the necessity, if any, for the use of the lane for access expired in 1912, when Heath Avenue, a public highway, was opened. This avenue runs in a generally northerly direction through the heart of the subdivided tract, and fronts the properties of both of the parties. There are no interior plots to be served by passage over the lane. The plaintiffs now own fee title to the lane. They, of course, had record notice of the state of this land when it was purchased by them from the city. But such notice does not require the continued existence of an easement of access whose purpose is completely ended. There would appear to be no sound reason for the continued assertion of such an easement, and, therefore, I see no just basis for continuing the implication of the easement. It is my view that land titles should not be subject to implied, as distinguished from express, encumbrances unless such burdens are reasonably necessary for the enjoyment and use of neighboring properties.
In sum, I hold that, as regards these plaintiffs and this defendant, the implied easement of ingress and egress, which arose in favor of the defendant’s prior grantees by reason of the sale of land according to a filed map of subdivision, did not accrue to the defendant. Since the easement was implied so that purchasers of interior lots may have access to and from their land, the implication ceases where a public highway has been built affording both parties free and untrammeled approach to and from that highway. Moreover, the extent of the permissible use in the dominant tenement should be one merely of passage to the street or lane. The burdened tenement or the reciprocal dominant tenement (in either situation it is the plaintiffs who are adversely affected as they not only own the property bordering on the lane, but also have fee title to the lane itself) does not have to suffer encroachments upon the property. Therefore, even were I to find that the easement survives to the present day, I would grant the plaintiffs’ prayer for a mandatory injunction to remove the encroachments and obstructions placed in the lane by the defendant, for their existence is patently inconsistent with the claimed easement and its extent (cf. Feuer v. Brenning, 279 App. Div. 1033, 1034; affd. 304 N. Y. 881).
*365 The plaintiffs are thus entitled to a declaration of their rights as to the unincumbered nature of the land in question, and a mandatory injunction is granted in their favor requiring the defendant to remove her encroachments upon Lot 166. By the same token, the defendant’s counterclaim contrariwise is dismissed on the merits. Settle findings of fact and conclusions of law and judgment. The exhibits (except those subpoenaed from official sources) may be obtained by respective counsel from the clerk upon due receipt therefor.